ANTONOPOULOS, APPELLEE, *v.* EISNER, APPELLANT.

(No. 31038—Decided June 8, 1972.)

*Messrs. Parks, Eisele, Lawrence & Bates,* for appellee.
*Messrs. Weston, Hurd, Fallon, Sullivan & Paisley,* for appellant.

SILBERT, J. This is an appeal from a decision of the Court of Common Pleas, overruling defendant appellant's motion to vacate a $10,000 default judgment, taken upon her failure to answer or otherwise appear and defend. Plaintiff's claim is in tort, for negligence, to recover for injuries sustained in a parking lot collision between automobiles driven by the parties. The whole of her special damages came to approximately $500.

By the motion to vacate, as supported by briefs, affidavits, and testimony, the defendant contends that her failure to answer was due to excusable neglect, and that she has a good and adequate defense that she ought to be permitted to plead, there being good reason justifying

relief from the judgment taken against her. She asserts that the accident resulted from the plaintiff's negligence, not from any negligence on her part. She denies that the plaintiff suffered injury, complaining, in the alternative, that any injury was comparatively minor and such a substantial judgment excessive under the circumstances. In turn, the plaintiff has neither alleged nor shown that she would suffer any special prejudice were the default set aside, apart, of course, from the trouble and expense which she incurred in obtaining and defending the judgment taken.

The defendant was served on Friday, November 13, 1970. Since her husband had prior experience with litigation in connection with his business affairs, and since she had none, she gave the summons and complaint to him. He testified that he telephoned her insurance agent the following week and then forwarded the papers to the agent, in Cincinnati, at the latter's request. Sometime later, Mr. Eisner again spoke with the agent by telephone, and was told that the papers had been received and were being sent to the insurance company. Mrs. Eisner testified that she thought the insurance company was going to do whatever was necessary in her defense.

Inexplicably, the papers were not received by the insurance company's east side (Cleveland) office until, or after, January 12, 1971, the date appearing on the Cincinnati postmark. On January 11th the default judgment had been received for journalization.

In due course the papers were forwarded to the insurer's litigation department which, after but a short delay, referred the matter to counsel. The docket was checked, the default, discovered, and the motion to vacate, prepared.

The trial court overruled the motion, stating that in its view:

"* * * in addition to forwarding the papers to the insurance agent or brokers, as the case might be, * * * the defendant also has *an obligation* to follow up and see what arrangements are being made by that agent." (Emphasis added.)

The trial court did not question the credibility of any witness. Much of the testimony was substantially uncontroverted. Appellant has assigned but one error:

"The trial court committed prejudicial error and abused its discretion in failing to grant defendant's motion to vacate the default judgment as a matter of law."

Specifically, she relies on Civil Rule 60(B), (1) and (5).

Civil Rule 55(B) provides that "If a judgment by default has been entered, the court may set it aside in accordance with Rule 60(B)." Rule 60(B) reads, in part, as follows:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect * * * or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for [reason] (1) * * * not more than one year after the judgment, order or proceeding was entered or taken * * *.

"* * * *"

Save for minor stylistic differences and wholly inconsequential changes in enumeration, the five grounds for relief included within Rule 60(B) were taken nearly verbatim from Rule 60(b) of the Federal Rules of Civil Procedure. In addition to the two grounds just set out, relief is available if warranted by newly discovered evidence or as a result of the misconduct of an adverse party, or where a prior judgment, although not voidable of itself, should not be permitted to stand or given prospective application. Void judgments are expressly included among the grounds enumerated in the federal rule, but not in the Ohio rule, which also omits language (1) abolishing the writs of *coram nobis, coram vobis,* and *audita querela,* and the bills of review and bills in the nature of a bill of review, and (2) providing that the rule has no effect on the power of the courts to grant relief in an independent action in certain cases.

While appellee urges that we look to prior Ohio law in construing Rule 60(B), sensibly,

"* * * when a statute is adopted from another jurisdiction, in substantially the same language, the provisions so adopted * * * [should be] construed in the sense in which they were understood at the time in the jurisdiction from which they were taken." *Fiske* v. *Buder* (C. C. A., 1942), 125 F. 2d 841, 844.

If an overview of prior Ohio law is useful, as background, it would be hazardous, at best, were the Civil Rules given a narrow construction, making them accord with former practice, and not treated as an effort to rectify the inadequacies of prior procedural law. *Cf.* Civil Rule 1(B) and the Staff Notes thereto.

Under prior Ohio practice, a court could vacate its final or interlocutory decisions during term, in the exercise of a sound legal discretion. *First Natl. Bank of Dunkirk* v. *Smith* (1921), 102 Ohio St. 120. Unless the judgment were void or might be attacked independently, in equity, a final order or judgment could be vacated after term only for one of the grounds listed in R. C. 2325.01. *Grelle* v. *Humbel* (Franklin Co., 1948), 84 Ohio App. 277. *Cf., Lincoln Tavern, Inc.,* v. *Sander* (1956), 165 Ohio St. 61; *Northern Ohio Power & Light Co.* v. *Smith* (1933), 126 Ohio St. 601, 611.

Had the Civil Rules not been adopted, appellant's motion would have been determined under the *Dunkirk* rule. Nevertheless, Rule 60(B) is to be read in *pari materia* with Rule 6(C). Because "[t]he effect of Rule 6(c) * * * upon the power of the court over its civil judgments [is] substantially similar to the effect which the abolition of terms of court would have had * * *" (Moore's Federal Practice, *supra*, para. 6.09[2], p. 1500.113; *cf.*, Advisory Committee Notes (1946) and cases cited therein as illustrative), Rule 60(B) must be read as exclusive and, therefore, as effecting a significant liberalization of R. C. 2325.01, reflecting the broad power inherent during term under pre-rule practice.

Insofar as material, R. C. 2325.01 provided that:

"The Court of Common Pleas * * * may vacate or modify its own final order, judgment, or decree after the term at which it was made;

"* * *;

"(C) For mistake, neglect, or omission of the clerk, or irregularity in obtaining a judgment or order;

"* * *; [or]

"(G) For unavoidable casualty or misfortune, preventing the party from prosecuting or defending;

"* * *."

As originally adopted, Federal Rule 60(b) provided that the court could "relieve a party or his legal representative from a judgment, order or proceeding *taken against him* through *his* mistake, inadvertence or excusable neglect" (emphasis added), and little more. Unlike R. C. 2325.01, this language clearly permitted relief, though judgment resulted from the movant's own neglect, provided his neglect were excusable. *Cf., Andring* v. *Andring* (Cuyahoga Co., 1965), 3 Ohio App. 2d 417.

However, the very clarity of the original rule rendered it too limited in scope, leading to the view that it was merely cumulative, and not exclusive, allowing relief where the writs of *coram nobis, coram vobis, audita querela,* or bills of review or bills in the nature of the bill of review would lie. See discussion, Moore's Federal Practice, *supra*, Vol. 7, paragraph 60.13 *et seq.* and, in particular, paragraph 60.17 pp. 33 *et seq.* and 91, and cases cited therein. In redrafting the rule in 1946, abolishing the common law writs and chancery bills, and adding five additional grounds of relief, the Advisory Committee recommended amending this language, *to broaden, not to limit its scope,* concluding that

"The qualifying pronoun 'his' [should be] eliminated on the basis that it is too restrictive, and that the subdivision should include the mistake or neglect of others which may be just as material and call just as much for supervisory jurisdiction as when the judgment is taken against the party through *his* mistake, inadvertence, etc." (Advisory Committee Note, 1946.)

The Ohio rule should be construed as equally broad. Unlike pre-rule federal practice, Ohio practice has been founded on code pleading since adoption of the Code of Civil Procedure in 1853. (51 Laws of Ohio, 57 (1853); *cf.,*

The Conformity Act of 1872, Judiciary Act of June 1, 1872, Section 5, 17 Stat. 196.) The common law writs did not survive, but were absorbed into, Section 534 of the Code of Civil Procedure, the progenitor of R. C. 2325.01 and, *arguendo*, Civil Rule 60(B). *Cf., Welton's Admr.* v. *Williams' Admrs.* (1876), 28 Ohio St. 472, 477; *Carey* v. *Kemper* (1887), 45 Ohio St. 93, 97. The forms of equity pleading, if not the substance of a proceeding on an original bill, disappeared in time. *Long* v. *Mulford* (1867), 17 Ohio St. 485, 508; *Seeds* v. *Seeds* (1927), 116 Ohio St. 144. If Federal Rule 60(b) expressly retains the independent action, such language has been excised from Civil Rule 60(B), leaving only the command that *any* relief from a judgment be sought by motion under procedures set out in the rules. Civil Rule 60(B), para. 2.

By comparison with Rule 60(B)(1), Rule 60(B)(5) is a residuary provision, a catchall meant to afford relief in the interest of justice, where relief would not be available under any of the other provisions of Rule 60(B), but which may not be used as a substitute for any of them. Staff Notes to Rule 60(B). *Cf., Klapport* v. *United States* (1949), 335 U. S. 601, 93 L. Ed. 266.

If, technically, Civil Rule 60(B) is interdependent with those rules governing the availability of subsequent procedural relief, specifically, in this instance, Rule 6(B), slavish obedience to the strict letter of the rules would violate the express command of Civil Rule 1(B). The great bulk of federal case law has simply permitted such additional relief, *sub silentio*, where Rule 60(b) is satisfied in a 60(b) case.

Correspondingly, Federal Rule 60(b) (1) has been interpreted as a remedial rule to be liberally construed. Moore's Federal Practice, *supra*, Vol. 7, paras. 60.22[2] and 60.22[3], pp. 247, *et seq.* During the quarter century since it was amended, it has been applied in innumerable cases involving a kaleidoscopic array of factual variations.

It has been held that relief in cases of unavoidable casualty or misfortune properly falls within the pro-

visions of Rule 60(b)(1), as, *e. g.*, in cases of illness. *Ken-Mar Airpark, Inc.*, v. *Toth Aircraft and Accessories Co.* (W. D. Mo., 1952), 12 F. R. D. 399. Relief has been granted where one of several defendants mistakenly thought it was represented by the attorney of another. *Standard Grate Bar Co.* v. *Defense Plant Corp.* (M. D. Pa., 1944), 3 F. R. D. 371. Where defendant undertook to act as her own attorney and mailed the plaintiff an unsigned and unentitled paper apparently meant to serve as an answer, without properly filing an answer, relief was granted. *Woods* v. *Severson* (D. Neb., 1949), 9 F. R. D. 84. See, also, *Kinnear Corp.* v. *Crawford Door Sales Co.* (D. S. C., 1970), 49 F. R. D. 3. Where it was not unreasonable for a defendant to have believed that settlement negotiations related to all of several suits pending against her, lulling her into a sense of complacency, and resulting in her failure to discover that her attorney had negligently failed to file an answer in one case, the trial court erred in refusing to grant relief, her neglect, if any, being excusable as a matter of law. *Barber* v. *Turberville* (C. A. D. C., 1954), 218 F. 2d 34.

Specifically, a motion to vacate has been allowed in a number of cases where the default judgment was taken upon the movant's failure to answer, or otherwise appear and defend or prosecute, resulting from a mix-up in the office of a statutory agent, an insurer, or counsel. *Tolson* v. *Hodge* (C. C. A. 4, 1969), 411 F. 2d 123; *Hutton* v. *Fisher* (C. C. A. 3, 1966), 359 F. 2d 913; *Trueblood* v. *Grayson Shops of Tenn.* (E. D. Va., 1963), 32 F. R. D. 190; *Ellington* v. *Milne* (E. D. N. C., 1953), 14 F. R. D. 241; *Wolfsohn* v. *Raab* (E. D. Pa., 1951), 11 F. R. D. 254; *Weller* v. *Socony Vacuum Oil Co. of New York* (S. D. N. Y., 1941), 2 F. R. D. 158.

Relief has been denied where: (1) the judgment resulted from deliberate action, or the moving party or his attorney made an informed choice, but not the best choice (*Dal International Trading Co.* v. *Sword Line, Inc.* (C. C. A. 2, 1961), 286 F. 2d 523, 525); or (2) the error resulted from the movant's gross (*i. e.*, totally inexcusable) neglect (*Greenspahn* v. *Joseph Seagram & Sons, Inc.* (C. C. A.

2, 1951), 186 F. 2d 616). And relief is generally unavailable (1) if the court would otherwise be required to ignore another rule of procedure or of law, were the relief granted, or it would be futile to grant the relief sought (*e. g., Bryan* v. *Groff* (C. A. D. C., 1958), 259 F. 2d 162, 163 and fn. 2); *cf., Gila River Ranch, Inc.,* v. *U. S.* (C. C. A. 9, 1966), 368 F. 2d 354, 357; or, of course, (2) if an unreasonable length of time, or more than one year, elapsed between the time judgment was taken and the time the motion for relief was filed, *i. e.*, where any substantial delay in filing the motion is not satisfactorily explained, or the one year limitation period has run.

Plaintiff has made much of the defendant's seeming unwillingness to cooperate with her or her counsel prior to the commencement of litigation. The defendant was under no legal obligation to cooperate. Plaintiff had her remedies under our motor vehicle insurance laws and apparently elected not to pursue them. Such a showing does not preclude relief. *Cf., Trueblood* v. *Grayson Shops of Tenn., supra* (32 F. R. D. 190).

It is clear that the defendant did not contact her insurance agent, or her insurer, until she was served, months after the accident occurred. There is no indication that this contributed to the default. While the insurance company did take approximately ten days before referring the matter to counsel, default was by then an accomplished fact.

Because no appearance had been entered, the defendant was not entitled to notice of the default proceedings. Civil Rule 55(A). She had none. On Friday, January 22, 1971, plaintiff's attorney obtained an order in aid of execution, which was filed with his affidavit on Monday, the 25th. The banks named in the order were served the following day; the defendant was not served until the 29th. Coincidentally, the motion to vacate was filed that same day, *i. e.*, the 29th, and within 18 days after judgment. The motion could hardly have been filed sooner, and almost certainly would have been filed later had the papers never been found.

Nor have we any difficulty in concluding that the de-

fendant's personal neglect was excusable. Out of trepidation as much as prudence, many defendants would take a more active interest in the progress of litigation than was shown here. Neither the defendant nor her husband followed up the telephone conversations between Mr. Eisner and the insurance agent. They did not write the agent. They did not attempt to contact the insurer. They simply did not think it was necessary.

As noted, Mr. Eisner had experience in litigation in connection with his business. It appears that when an insurance company had been involved he had done just what he did here: he turned the matter over to his agent, having given the agent what he believed were the full details of the incident. In each instance, the company defended.

It was not unreasonable that the defendant should believe her husband had done all that was then necessary. A defense could have been interposed without any further action on their part. Civil Rule 11. At least in this county, there is a substantial delay between the time a suit is commenced, and the time a case will be called for trial.

Clearly, the pleadings, the motion to vacate, the affidavits and evidence, if true, were sufficient to require a conclusion that a meritorious defense to the action was made out. *Cf.*, the test in *Livingston* v. *Rebman* (1959), 169 Ohio St. 109; see, also, *Tozer* v. *Charles A. Krause Milling Co.* (C. C. A. 3, 1951), 189 F. 2d 242; and discussion in *Trueblood* v. *Grayson Shops of Tenn., supra* (32 F. R. D. 190).

Plaintiff contends, however, that the appellant was required to show just what happened to the papers, *i. e.*, to strictly account for their temporary disappearance, to show whose fault it was that they were not promptly received by the insurance company, and to demonstrate that such neglect, if any, was itself excusable. On cross-examination, and without objection, Mr. Richard Lyons, an employee of the insurance company, was permitted to testify as to the substance of the agent's knowledge of the matter. At best, the agent's recollection was limited. It does appear that he received the papers and turned them over to his "claims girl," intending that they be forwarded in due

course. There is no explanation as to why they were dispatched, or received, as late as they were.

The federal courts have allowed relief even though the surrounding circumstances have not been, or cannot be, entirely explained (see, *e. g., Trueblood* v. *Grayson Shops of Tenn., supra* (32 F. R. D. 190); *cf., Ledwith* v. *Storken* (D. Neb., 1942), 2 F. R. D. 539, 542.

If Rule 60(B) is to be liberally construed, it should be applied to avoid inequity. Relief is available in cases of unavoidable misfortune or casualty, and we conclude, therefore, that Rule 60(B) precludes relief, in an otherwise proper case, only if appellant's personal inexcusable neglect was the efficient cause of the judgment taken against her. That is to say, in part, that the inexcusable neglect, if any, of appellant's agents should not be imputed to her. *Cf., e. g., Barber* v. *Turberville, supra* (218 F. 2d 34), 36; *Ellington* v. *Milne, supra* (14 F. R. D. 241).

In practice, relief has frequently been allowed in cases where conduct fell far short of that which would be expected of a person in the agent's business or practice, under circumstances which would hardly be classified as excusable, as to him, given the specialized nature of his business or profession. See, *e. g., Trueblood* v. *Grayson Shops of Tenn., supra* (32 F. R. D. 190); *Robins* v. *Pitcairn* (N. D. Ill., 1940), 3 F. R. S. 60b. 21, Case 2. *Cf., Radack* v. *Norwegian American Line Agency, Inc.* (C. C. A. 2, 1963), 318 F. 2d 538, 542.

A party is not barred from relief by his agent's (usually his attorney's) unauthorized, deliberate (albeit innocent) misconduct. *In re Gsand* (C. C. A. 3, 1946), 153 F. 2d 1001; *cf.,* also, the decision in *Robinson* v. *E. P. Dutton Co.* (S. D. N. Y., 1968), 45 F. R. D. 360, 362. Where the rubric of imputed neglect has been referred to in overruling a motion for relief under Rule 60(b), other factors were also present: the moving party's own conduct was inexcusable, the case had gone to trial, or the motion was meant to serve as a substitute for appeal, after the time for appeal had run, or to permit appeal, out of rule, or the movant had otherwise acquiesced in the action taken, or not taken, by

his attorney or agent.  See, *e. g., Ledwith* v. *Storken, supra* (2 F. R. D. 539), 542 and 544-545, which predates the 1946 amendment but has nevertheless been followed subsequently.

We have carefully examined the many related cases cited by the parties as illustrating the views of our sister states.  No good purpose would be served by discussing them extensively, save to note that when decided under rules actually analogous to Civil Rule 60(B), they are in accord with our view of the matter, except where they may have taken a somewhat different position on imputed neglect, relying on their own prior procedural law.  It is in light of the limitations of prior Ohio law that our decisions in *Andring* v. *Andring, supra* (3 Ohio App. 2d 417), and in *Berea Bus Lines Co.* v. *Seminatore* (Cuyahoga Co., 1969), 17 Ohio App. 2d 31, should be read.  As we indicated in those cases, under prior Ohio practice the neglect or misconduct of an attorney or other agent was not imputed to a party, provided his own conduct was not such as to preclude relief.

The individual defendant should hardly be caused to suffer simply to keep others on their toes because of a broker's or insurer's failure to conduct its business adequately, particularly where the defendant may be obligated to defend, or especially where, as here, the company subsequently attempts to reserve its rights to disclaim liability under the contract.  It was not necessary that appellant strictly account for the temporary disappearance of the papers, apart from the necessity of showing an apparent failure of justice in this case, for it was not necessary that she detail her broker's neglect or show that his conduct was excusable.  Consequently, the trial court erred in overruling the motion to vacate the default judgment.

Appellee argues that Rule 60(B) is one of discretion. Necessarily, that discretion is not an unbridled one.  It is only a sound legal discretion.  See, *e. g., Tozer* v. *Charles A. Krause Milling Co., supra* (189 F. 2d 242), 244; *Bridoux* v. *Eastern Air Lines* (C. A. D. C., 1954), 214 F. 2d 207, 209-210, cert. den., 348 U. S. 821.  The trial court must take

into consideration a variety of factors. Final judgments should not be lightly disturbed. Rule 60 (B) relief is available only on timely motion, and is not intended to serve as a substitute for appeal. But cases should be decided, where possible, on their merits, after giving all parties their day in court. And the rule should be liberally applied to avoid unjust results or prejudice to either party. See Moore's Federal Practice, *supra*, Vol. 7, paragraph 60.19 pp. 226 *et seq.*, and, particularly, pp. 237-239.

While it appears that federal appellate courts rarely interfere with an order vacating a default judgment, they tend to subject a contrary decision to the closest scrutiny. It is axiomatic, under federal practice, that

"Where timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." Moore's Federal Practice, *supra*, Vol. 7, para. 60.19, pp. 232-233. See, *e. g.*, *Bridoux* v. *Eastern Air Lines, supra* (214 F. 2d 207), 210; *Russell* v. *Cunningham* (C. C. A. 9, 1960), 279 F. 2d 797, 804; *Tolson* v. *Hodge, supra* (411 F. 2d 123), 130; *Horn* v. *Intelectron Corp.* (S. D. N. Y., 1968), 294 F. Supp. 1153, 1155.

This is particularly so, as these cases serve to further illustrate, where (1) no substantial prejudice would result to the party in opposition, or (2) the amount of the judgment taken by default is substantial in comparison with any resulting prejudice which, moreover, may be largely minimized in particular cases through the exercise of the trial court's power to impose or condition relief upon just terms. Consequently, while the stability of judgments is adequately protected, the harsh and perhaps unjust burden of enforcing a default judgment may often and should be avoided—this being the essential reasoning underlying the rule frequently stated by the federal courts that, where a substantial sum of money is involved, a default judgment should be set aside, unless such a result is not reasonably avoidable.

As indicated, judgment was taken for $10,000, although

200

special damages are only claimed to have approximated $500. Plaintiff has not claimed, nor attempted to show, that she has suffered any special prejudice, apart from the trouble and expense to which she has necessarily been put in taking and defending her default judgment, the extent of which, moreover, does not appear of record and is not claimed to have been substantial. Appellant's motion to vacate was promptly filed, once it was realized that the default judgment had been taken. Her own conduct in this affair, if less than might have been hoped for, was at least excusable.

Accordingly, the judgment of the trial court is reversed and the case remanded with instructions that the default judgment be set aside, with further proceedings according to law.

*Judgment reversed.*

DAY, C. J., and WASSERMAN, J., concur.