CITY OF CANTON ET AL., APPELLANTS, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.
OFFICE OF CONSUMERS' COUNSEL, APPELLANT, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Canton v. Pub. Util. Comm. (1980),
63 Ohio St. 2d 76.]

(Nos. 79-1032 and 79-1033—Decided July 9, 1980.)

*Mr. Keith F. Henley, Mr. John R. Hoffman, Jr.,* and *Mr. Harry E. Klide,* law director, for appellants in case No. 79-1032.

*Mr. William A. Spratley,* consumers' counsel, *Mr. Orla E. Collier, Mr. Richard P. Rosenberry* and *Mr. David M. Neubauer,* for appellant in case No. 79-1033.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Harris S. Leven,* for appellee commission.

*Messrs. Squire, Sanders & Dempsey, Mr. Alan P. Buchmann, Mr. Richard W. McLaren, Mr. C. O. Arnebeck, Jr.,* and *Mr. Alan Kessler,* for intervening appellee Ohio Power Co.

*Per Curiam.* The principal issue presented for resolution is whether the dedicated facilities method used by the

commission to allocate rate base property and expenses to Kaiser and Ormet was reasonable and lawful. R. C. 4903.13. Appellants argue that the dedicated facilities or direct assignment approach to allocating rate base property and expenses to Kaiser and Ormet is unreasonable, as this approach is justified only where the property allocated to the ratepayer is exclusively used by that ratepayer. Furthermore, appellants challenge this allocation procedure on the basis that it fails to allocate sufficient costs to Kaiser and Ormet, thereby causing other ratepayers to subsidize operations of Ohio Power for which they receive no benefit.

In *Ohio Edison Co.* v. *Pub. Util. Comm.* (1962), 173 Ohio St. 478, this court recognized, at page 483, that the determination of the proper method of allocation for a public utility is a controversial problem for which no one standard may be imposed. Thus, it was concluded in *Ohio Edison,* at page 484, that, "* * *as long as the method [of allocation] chosen by the commission is not unreasonable, this court should not disturb it." It was noted further that, in such matters, the appropriate question is not whether the method of allocation used is the best method, but it is "whether the method of allocation used * * *by the commission is reasonable." *Id.*

The commission's staff, upon completing its investigation into the instant application as required by R. C. 4909.19, filed its report with the commission and concluded that, upon a review of the special contracts between Ohio Power and Kaiser and Ormet, "the dedicated* * *[facilities] method of exclusion, as opposed to the peak responsibility method of exclusion," was the appropriate one. During the hearing, staff witness William F. Fox explicated the staff's rationale for adopting this approach:

"After reviewing the history of both Kaiser's and Ormet's relations with Ohio Power and considering the character of their load characteristics, the Staff is of the opinion that the other jurisdictional customers have benefited over the years due to the existence of these contracts. At the time the contracts were entered into, the dedicated plant method resulted in higher charges to Kaiser and Ormet than the existing average cost per MW to other customers. As additional and more expensive plant was added to serve these

other customers, but not directly Kaiser and Ormet, the average cost per MW is now higher than the dedicated plant charges. Staff is of the opinion that the dedicated plant concept was proper and accepted in the past and it is still proper today and should be accepted for purposes of this proceeding."

The commission, in adopting the staff approach, based its conclusion in part upon its previous opinion and order in case No. 75-161-EL-SLF, wherein it reviewed the contracts between Ohio Power and Kaiser and Ormet.[1] Because the provisions of these contracts as currently in effect called for the use of the dedicated facilities approach in pricing service delivered to these industrial users, the commission concluded that use of this approach does not constitute an unreasonable basis to determine costs in the allocation process. Based upon an analysis of this concept as used in the past by Ohio Power and other industrial power users, the commission determined that the dedicated facilities method was appropriate, notwithstanding the fact that the property directly assigned to Kaiser and Ormet was not exclusively used by these companies. This conclusion, insofar as it was applicable to Ormet, was supported by the testimony of appellants' chief witness, Dr. Caroline M. Smith, who conceded that this allocation procedure was to some extent justified for Ormet based upon the "historical development of the Ohio Power-Ormet Relationship." Therefore, upon a review of the evidence submitted, we are not convinced under the facts at bar that the dedicated facilities allocation method must by definition be

---

[1] Appellants challenge the commission's reliance on Public Utilities Commission case No. 75-161-EL-SLF to support its conclusions in the instant matter, contending that the commission's reference thereto violates precedent of this court requiring the commission to base its determinations on the record before it. *Ideal Transportation Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 195; *Motor Service Co.* v. *Pub. Util. Comm.* (1974), 39 Ohio St. 2d 5. We do not find that the commission's reference to the prior cause was improper, however, as administrative notice was taken of the application of the Ohio Power Company in that cause, and both contracts were admitted into the record as part of the instant proceedings. Furthermore, appellants' witness, Dr. Smith, averred that her testimony in this cause was based on the transcripts of the testimony presented in case No. 75-161-EL-SLF. Under such circumstances, the commission's reference to its findings in case No. 75-161-EL-SLF to rebut appellants' assertions was not improper. *Forest Hills Utility Co.* v. *Pub. Util. Comm.* (1974), 39 Ohio St. 2d 1.

limited to those instances where the ratepayer is served exclusively by identifiable plant or property of the utility.

As a secondary challenge to the allocation method employed by the commission, appellants argue that the dedicated facilities allocation method fails to remove from the rate base all costs attributable to service delivered to Kaiser and Ormet. Appellants argue that the commission's use of this allocation procedure has the effect of shifting costs of service attributable to Kaiser and Ormet to Ohio Power's remaining ratepayers in violation of R. C. 4905.33 and 4905.35.[2]

Staff witness Fox testified that before the staff accepted the applicant's proposal to exclude Kaiser and Ormet by direct assignment, "the Staff spent a large amount of time reviewing much of the data and testimony filed in case No. 75-161-EL-SLF," as well as the "resulting Opinion and Order." Fox indicated that the commission found " '***the dedicated facilities concept as employed in the subject contracts does assign cost to Ormet and Kaiser on a basis related to cost causation.***It is apparent that if there were ever customers who's [*sic*] power needs warranted special arrangements with a utility, Ormet and Kaiser would have to be viewed as prime candidates. Certainly the extent and nature of their service requirements set them apart from the generality of Ohio Power's customers and provide a reasonable basis for classifying them for rate purposes. The contracts under which Ormet and Kaiser are billed are carefully drafted instruments which were entered into only after exclusive arm's length negotiations between highly sophisticated parties. The rights and obligations detailed therein

---

[2] R. C. 4905.33 provides, in applicable part:

"No public utility shall directly or indirectly, or by any special rate, rebate, drawback, or other device or method, charge, demand, collect, or receive from any person, firm, or corporation a greater or lesser compensation for any services rendered, or to be rendered, except as provided in Chapters 4901, 4903, 4905, 4907, 4909, 4921, 4923 and 4925 of the Revised Code, than it charges, demands, collects, or receives from any other person, firm, or corporation for doing a like and contemporaneous service under substantially the same circumstances and conditions.***"

R. C. 4905.35 provides:

"No public utility shall make or give any undue or unreasonable preference or advantage to any person, firm, corporation, or locality, or subject any person, firm, corporation, or locality to any undue or unreasonable prejudice or disadvantage."

represent a balancing of interests and needs of those parties and the Commission seriously doubts if such a balance would be struck or maintained if these customers were served pursuant to general rate schedules.' "

When queried relative to whether the ratepayers in the instant case were bearing any burden (costs) associated with the service delivered pursuant to the Kaiser and Ormet contracts, witness Fox stated, in essence, that they were not. This testimony conflicts with the testimony submitted by appellants' expert, Smith, who stated in summary that the allocation procedure adopted by the staff, and thereafter by the commission, resulted in "excessive revenue burdens to jurisdictional customers whose rates are affected by this proceeding."

Upon a review of the evidence in the record, we do not conclude that the allocation procedure employed by the commission in these proceedings violated the provisions of R. C. 4905.33 or 4905.35. Whether the allocation method in fact shifted costs from the special contracts to the jurisdictional ratepayers is an evidentiary question. "This court with regard to evidentiary matters does not review a finding and order of the commission *de novo.* Where conflicting evidence is presented to the commission with regard to a matter at issue, the commission's determination will not be disturbed unless the party who challenges that finding demonstrates that it is manifestly against the weight of the evidence and so clearly unsupported by the record in the cause as to demonstrate misapprehension, mistake, or willful disregard of duty." *Masury Water Co.* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 147, 148-149.

Appellants additionally question whether certain rate-case and advertising expenses were properly included by the commission as necessary and normal operating expenses of providing service to the tariff customers. Appellants imply with reference to the rate expenses that some of the expenses incurred by Ohio Power, and allowed by the commission, represented work performed by Ohio Power's parent utility, and because the data so acquired will allegedly be used by the parent utility, appellants maintain that these rate-case expenses may not, in accordance with this court's holding in

*Ohio Edison Co.* v. *Pub. Util. Comm., supra* (173 Ohio St. 478), be included in this rate case as an operating expense.

Most recently, it was recognized that the matter of the inclusion of ratemaking expenses is "within the discretion of the commission." *Ohio Utilities Co.* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 153, 163, 164. Similarly, this court observed in *Cincinnati* v. *Pub. Util. Comm.* (1950), 153 Ohio St. 56, 60, that the rule in this state, and in many other jurisdictions, is that when a utility challenges the rates fixed by the commission as being unfair or unjust, and the utility is successful in that appeal, "proper expenses incurred by the utility in the preparation and presentation of its side of the controversy may be included by the commission among the operating expenses in computing a fair return to the company."

We see no reason to retreat from precedent in this area, nor do we find evidence in the record which suggests that the commission's allowance of rate-case expenses in this matter was unreasonable. The commission determined that the rate-case expenses did not relate to costs incurred in any other rate-case proceeding and did not represent, significantly, work performed by Ohio Power's parent utility. Consequently, this case is distinguishable from *Ohio Edison, supra,* cited by appellants.

Finally, appellants urge us to re-examine the wisdom of permitting utilities to pass all advertising expenses along to consumers. In light of our decision in *Cleveland* v. *Pub. Util. Comm.* (1980), 63 Ohio St. 2d 62, the issue of advertising expenses is remanded to the commission. The commission must recalculate Ohio Power's allowable operating expenses, excluding those institutional and promotional advertising expenses which do not have a direct, primary benefit to its customers.

For the foregoing reasons, the order of the commission is affirmed in part and reversed in part, and this case is remanded to the commission on the issue of advertising expenses.

*Judgment accordingly.*

CELEBREZZE, C. J., W. BROWN and SWEENEY, JJ., concur.

84

LOCHER, J., concurs in that part of the opinion dealing with advertising expenses and in the judgment.

HERBERT, P. BROWN and HOLMES, JJ., would affirm the order of the Public Utilities Commission in its entirety.