GMS Management Co. *v.* Axe et al.

(No. 81 CV G 522—Decided August 31, 1982.)

Cleveland Heights Municipal Court.

*Mr. Stuart J. Graines* and *Mr. Bruce Salomon,* for plaintiff.

*Messrs. Jones, Day, Reavis & Pogue, Mr. John D. Carroll, III,* and *Mr. Joseph W. Bauer,* for defendants.

Hunter, J. This matter came on for decision on defendants' Civ. R. 60(B)(1) through (5) motion to vacate judgment, the brief in support thereof, and the exhibits attached thereto. Plaintiff has made no response to the motion within the time allowed by rule of court, and has not submitted any evidence in opposition to the motion. No oral hearing was held on the motion, and no evidence other than that mentioned above was considered by the court.

The record in this case reflects the following: On March 23, 1981, plaintiff filed a complaint in forcible entry and detainer against the defendants Howard Axe and Blayne Marie Hoerner. In the title of the complaint the plaintiff styled itself "GMS Management Co.," and gave its address at 5010 Mayfield Road #310, Cleveland, Ohio 44124. This is the same address as that given for its principal

counsel, Stuart J. Graines. The single "cause of action" asserted in the complaint alleged that "[t]he said defendant [sic] entered upon said premises as tenants of plaintiff, the lease hereof expired at the time therein first mentioned [i.e., March 1, 1981], and from that time said defendants have unlawfully and forcibly held over." The complaint also alleged that on the 9th of March, 1981, "plaintiff duly served upon the said defendants as required by law, notice in writing to leave premises." A copy of the notice was attached to the complaint.

A summons containing the information required by R.C. 1923.06 was issued on March 23, 1981, and personally served on an "adult male" by the deputy bailiff of this court on March 27, 1981. Since the date of service was some twelve days before the hearing date specified in the summons, the minimum five day period between service and hearing required by R.C. 1923.06(A) was satisfied. However, it does not appear from the record whether defendant Howard Axe was the "adult male" receiving service. Neither does it appear that defendant Blayne Marie Hoerner was ever served with a summons. Be that as it may, neither defendant has asserted a timely challenge to this court's jurisdiction over his or her person, and in the absence of such a challenge, defendants have conferred jurisdiction on this court by the entrance of a general appearance herein. *Pinkus* v. *Pinkus* (Apr. 15, 1982), Cuyahoga App. No. 43776, unreported.

Neither defendant asked for a continuance for the purpose of serving an answer to the complaint, and it does not appear from the record that any answer was served and filed on behalf of defendants. Therefore, under the provisions of R.C. 1923.061(A), the defendants were under the obligation of presenting their defenses to the claim at the hearing.

A hearing was held on April 8, 1981, the date stated in the summons. The defenses now raised by defendants' motion to vacate were not raised at the hearing because, it is said, they were not represented by counsel at that time, and they were then unaware of the existence of the defenses. That they were not represented by counsel is immaterial; that is not an excuse for failing to follow procedure mandated by rule or statute. *White* v. *White* (June 18, 1981), Cuyahoga App. No. 43572, unreported; *Spratt* v. *Frederickson* (Apr. 26, 1979), Cuyahoga App. No. 38579, unreported. That they were unaware of the existence of these defenses is the crux of this matter.

After the hearing, and on the same date, April 8, 1981, this court entered judgment for the plaintiff. Now, on June 23, 1982, more than a year later, defendants served their motion to vacate on plaintiff, and filed it with this court a day later. The motion is divided into two branches, and each branch will be discussed separately.

In substance, defendants' motion asserts that "evidence as to the plaintiff's use of a fictitious name and alias for the purpose of deceiving defendants and avoiding service of court papers and notice, which conduct severely undermined defendants' ability to establish their defense" was "learned of only after the judgment was entered." Defendants argue that this warrants relief from judgment under each ground listed in Civ. R. 60(B). For sake of argument, this court will assume that the use of "a fictitious name and alias" as alleged did "undermine defendants' ability to establish their defense." But even with this assumption, there remain three difficulties which prevent granting relief on this branch of the motion.

First, the only evidence before this court in this action that plaintiff ever supplied such a fictitious name or alias to defendants is the statement of defendants' counsel to that effect in the motion and brief in support of the motion; the exhibits in support of the motion imply that plaintiff did use such a fictitious name or

alias, but they do not clearly demonstrate that plaintiff ever furnished such a name to these defendants. As it is noted in the syllabus of *East Ohio Gas Co.* v. *Walker* (1978), 59 Ohio App. 2d 216 [13 O.O.3d 234]: "* * * Unsworn allegations of operative facts contained in a motion for relief from judgment filed under Civil R. 60(B) or in a brief attached to the motion are not sufficient evidence upon which to grant a motion to vacate judgment." Accordingly, this branch of defendants' motion must be overruled for want of sufficient evidence to establish the ground for relief from judgment.

Secondly, this branch of the motion must be overruled because the motion was not timely. Assuming the truth of all that defendants allege, and construing it most favorably towards the defendants, then plaintiff's conduct clearly falls within Civ. R. 60(B)(3): fraud, misrepresentation or other misconduct of the adverse party. But a motion premised on Civ. R. 60(B)(1) through (3) must be served not later than one year after the judgment was entered, and this motion was served more than one year after entry of the judgment. Therefore, it is time-barred, and no relief may be granted.

But defendants also urge Civ. R. 60(B)(4) and 60(B)(5) as grounds in support of this branch of the motion. Their reliance is misplaced. To begin with, their argument that this judgment should be vacated because it has been satisfied by their leaving the premises is untenable. If this were a ground for relief in these circumstances, then every judgment could be vacated once it was satisfied. Civ. R. 60(B)(4) never contemplated such a result. Secondly, the last subground of Civ. R. 60(B)(4) is inapplicable because this is not a judgment that has prospective effect. But even if it were, that which makes it inequitable to continue to give the judgment prospective effect occurred prior to the entry of the judgment, and is thus not a reason for granting relief. *Wurzelbacher* v. *Kroeger* (1974), 40 Ohio St. 2d 90 [69 O.O.2d 440]; *Hartford* v. *Hartford* (1977), 53 Ohio App. 2d 79 [8 O.O.3d 132]; *Higley* v. *Brown* (Sept. 18, 1978), Montgomery App. No. 5872, unreported; *Schonhardt* v. *Schonhardt* (May 18, 1978), Cuyahoga App. No. 37894, unreported. And as for Civ. R. 60(B)(5), it is well settled that it cannot be used as a substitute for Civ. R. 60(B)(3) when relief under 60(B)(3) is time-barred. *Adomeit* v. *Baltimore* (1974), 39 Ohio App. 2d 97 [68 O.O.2d 251]; *Antonopoulos* v. *Eisner* (1972), 30 Ohio App. 2d 187 [59 O.O.2d 309]; *Celina Mut. Ins. Co.* v. *D'Agostino* (South Euclid M.C. 1971), 31 Ohio Misc. 21. As it is said in *Adomeit, supra,* at 105: "Civil Rule 60(B)(5) which allows relief for 'any other reason justifying relief from the judgment' is a catch-all provision, but it is not to be used as a substitute for Civil Rule 60(B)(1), (2) or (3), when it is too late to seek relief under these provisions." And as it is noted in the first paragraph of the syllabus of *D'Agostino, supra:*

"Relief under Section 60(B)(5) of Rules of Civil Procedure is limited to reasons 'other' than those set forth in Items (1) through (4) of Section 60(B). To conclude otherwise would enable a party to escape the one-year limitation prescribed by Items (1), (2) and (3)."

Finally, even if Civ. R. 60(B)(4) or (5) were otherwise applicable, defendants have not presented this court with any *evidence* of unusual circumstances explaining the fourteen month delay in making the motion. Accordingly, there is nothing before this court from which the court could find that the motion was made "within a reasonable time." *Gilchrist* v. *Townsend* (June 7, 1979), Cuyahoga App. Nos. 38913 & 38914, unreported; *City National Bank & Trust Co. of Columbus* v. *Malloy* (Feb. 15, 1979), Franklin App. No. 78AP-545, unreported.

Therefore, for all of the above reasons, the branch of defendants' motion premised on plaintiff's alleged use of a fictitious name and alias must be overruled even if that alleged use did severely

undermine defendants' ability to establish their defense to the forcible entry and detainer action.

The remaining branch of defendants' motion is premised on the thesis that at the time the complaint was filed, and at the time the judgment was taken, the plaintiff had no legal existence as a corporation, and/or it lacked the legal capacity to sue. Ironically, if defendants establish this thesis, their Civ. R. 60(B) motion for relief from judgment must be overruled *as such.* If plaintiff did not exist as a corporation, or if it did not have the legal capacity to sue, then no action was commenced against these defendants. But if no action was commenced, the judgment purportedly entered is a void judgment, rather than a voidable one. *Cobble* v. *Farmers' Bank* (1900), 63 Ohio St. 528; *Safeco Ins. Co.* v. *Colerain Twp. Trustees* (March 4, 1981), Hamilton App. No. C-800050, unreported. However, Civ. R. 60(B) does not extend to void judgments. See Ohio Rules Advisory Committee Staff Note to Civ. R. 60(B). A motion to vacate a void judgment is of common law ancestry. *Pinkus* v. *Pinkus, supra.* Therefore, the Civ. R. 60(B) motion does not lie as a vehicle for vacating this judgment on the grounds proffered in the second branch of defendants' motion. That does not mean, however, that defendants cannot succeed in obtaining the vacation of this judgment by their present motion.

The designation on defendants' motion is not controlling; the motion may be considered for what it is rather than for what it is designated to be. *North Royalton Edn. Assn.* v. *Bd. of Edn.* (1974), 41 Ohio App. 2d 209 [70 O.O.2d 434]. Therefore, in the exercise of its inherent power to set aside void judgments, this court may treat defendants' Civ. R. 60(B) motion as a common law motion to vacate a void judgment. This is no disadvantage to defendants; where only the parties to the action are affected by the judgment, there is no point in time beyond which the judgment becomes valid, and the motion to vacate the void judgment is not subject to a time limitation. *Fasick* v. *Fasick,* (Nov. 24, 1978), Cuyahoga App. Nos. 37826 & 37875, unreported; Ohio Rules Advisory Committee Staff Note to Civ. R. 60(B). Additionally, when a judgment is challenged as void it is not necessary that the defendants plead or prove that they have a valid defense to the action. *Lincoln Tavern, Inc.* v. *Snader* (1956), 165 Ohio St. 61 [59 O.O. 74]; *Hayes* v. *Kentucky Joint Stock Land Bank of Lexington* (1932), 125 Ohio St. 359; *Kingsboro* v. *Tousley* (1897), 56 Ohio St. 450. Thus, the principal objections to defendants' motion as a Rule 60(B) motion do not apply to their motion when it is treated as a common law motion to vacate a void judgment. Accordingly, in the exercise of its inherent power, this court elects to treat this branch of defendants' motion as the common law motion to vacate a void judgment.

It is now well settled that if the plaintiff does not have actual or legal existence at the time the complaint is filed the action fails for want of commencement. *Council of Whitehall* v. *Rogers* (1980), 69 Ohio App. 2d 124 [23 O.O.3d 329]; *Group of Tenants* v. *Mar-Len Realty, Inc.* (1974), 40 Ohio App. 2d 449; *Levering* v. *Riverside Methodist Hosp.* (July 14, 1981), Franklin App. No. 81AP-374, unreported. It is sometimes said in these cases that the complaint is a nullity, or that there is no complaint. From what is said in *Kossuth* v. *Bear* (1954), 161 Ohio St. 378 [53 O.O. 280], however, it is apparent that the true doctrine is this: When the suit fails for want of commencement, no *action* ever comes into existence, and there is therefore no action to which the complaint can relate. As a consequence, the complaint must be stricken from the court's files because of the nonexistence of the action, and not because of the nonexistence of the complaint. In any event, there appears to be at least one exception to the general rule stated above. An action brought in the name of a nonex-

istent legal entity will be deemed commenced if the parties operating under the name of the nonexistent entity have actual existence, and if they can be identified from the record. *State, ex rel. Cleveland Municipal Court,* v. *Cleveland City Council* (1973), 34 Ohio St. 2d 120 [63 O.O.2d 199]. But, see, *Council of Whitehall,* v. *Rogers, supra,* which appears to reject his exception. Whether this exception is valid or not, it does not apply in this case. If it is assumed that "GMS Management Co." does not have legal existence as such, then the parties operating under that name cannot be identified from the present record, and the general rule will prevail here.

It is equally well settled that if the plaintiff does not have legal capacity to sue at the time the complaint is filed, and if that lack of capacity is not cured prior to the entry of final judgment, no action is commenced. *Walsh* v. *J. R. Thomas' Sons* (1915), 91 Ohio St. 210; *Citizens Loan & Savings Assn.* v. *Krickenberger* (1932), 46 Ohio App. 228. Therefore, before this judgment can be found void for failure of commencement, the defendants must convince this court of at least one of two things: The plaintiff has no legal existence, or if it does have legal existence, it lacked the capacity to sue at the time the complaint was filed, and that lack of capacity was not cured prior to the entry of the judgment.

The legal existence of a corporation begins with the filing of the articles of incorporation. R.C. 1701.04(D). It is this legal existence that gives the corporation the legal capacity to sue. R.C. 1701.13(A). In the case at bar, defendants' motion asserts that the plaintiff GMS Management Co. is a corporation whose articles of incorporation were cancelled on December 15, 1977, because of a failure to file and pay franchise taxes due. The evidence furnished in support of this assertion suggests that as of June 16, 1982, the articles of incorporation remain cancelled, and no application for reinstatement has been filed by the corporation. The question thus presented is whether the cancellation of the plaintiff's articles of incorporation terminates the legal existence of the corporation as of the date of cancellation.

The statutory provisions most pertinent to this inquiry are the following:

R.C. 5733.20: "[If a corporation does not make the required reports and returns, and does not pay the required taxes or fees, the Secretary of State shall cancel its articles of incorporation.] Thereupon all the powers, privileges, and franchises conferred upon such corporation by such articles of incorporation * * * shall cease, subject to section 1701.88 of the Revised Code."

R.C. 5733.21: "No person shall exercise or attempt to exercise any powers, privileges, or franchises under the articles of incorporation * * * of a corporation after such articles * * * [are] canceled as provided by law for failure to make a report or return or to pay any tax or fee."

R.C. 5733.99: "Whoever violates Section 5733.21 of the Revised Code shall be fined not less than one hundred nor more than one thousand dollars."

R.C. 1701.88(A): "When * * * the articles of a corporation have been canceled * * *, the corporation shall cease to carry on business and shall do only such acts as are required to wind up its affairs, but for such purpose it shall continue as a corporation."

R.C. 1701.97: "No person shall exercise or attempt to exercise any rights, privileges, immunities, powers, franchises, or authority under the articles of a domestic corporation after such articles have been canceled * * *, except such acts as are incident to the winding up of the affairs of such corporation."

R.C. 1701.99: "Whoever violates section 1701.97 of the Revised Code shall be fined not less than one hundred nor more than one thousand dollars."

Defendants cite *Package Sales Corp.* v. *Cincinnati Orchards Co.* (Cincinnati

M.C. 1922), 24 Ohio N.P. (N.S.) 313, in support of their thesis that cancellation results in legal extinction, and that case does suggest that the corporation "ceased to exist" when the articles of incorporation were cancelled for failure to pay the annual franchise tax. *Id.* at 319. If this court were writing on a clean slate it would agree with the Cincinnati Municipal Court; it would hold that upon cancellation of the articles of incorporation, the corporation ceases to exist for any purpose other than the winding up of its affairs, and that it lacks the legal capacity to bring any suit other than one essential or incidental to the winding up of its affairs. But the slate is not clean; it is covered with a number of decisions that hold otherwise, and some of those decisions are absolutely binding on this court. See *Sweeny* v. *Keystone Driller Co.* (1930), 122 Ohio St. 16; *Eversman* v. *Ray Shipman Co.* (1926), 115 Ohio St. 269; *E. G. Tillotson & Co.* v. *Ward* (1938), 59 Ohio App. 50 [12 O.O. 367]; *I. J. Goldstein Co.* v. *Mitchell* (1921), 14 Ohio App. 231; *Fitzreylan Realty Co.* v. *Ohio Valley Advertising Corp.* (C.P. 1941), 21 O.O. 160; and *J. H. Hinz Co.* v. *Freeman* (Cleveland M.C. 1939), 28 Ohio Law Abs. 546.

The following passages from *Eversman* v. *Ray Shipman Co., supra,* appear to be controlling:

"All these sections [then Sections 5509 through 5513, General Code; now Sections 5733.20 through 5733.24, Revised Code] must be construed *in pari materia.* It is claimed by the plaintiff that Section 5509 [R.C. 5733.20] is self-executing, and that the action of the secretary of the state *ipso facto* terminates all power and authority of the corporation; that all of its acts thereafter, until reinstated, are absolutely void and of no effect. If the broad and sweeping language of Section 5509 [R.C. 5733.20] should be taken without reference to the other sections, it would be difficult to answer that contention. When they are all read together, as parts of a single piece of legislation, and when the purpose of that legislation is taken into consideration, and when that enactment is construed in the light of the previous legislation on that subject, the language of Section 5509 [R.C. 5733.20] must be held to have a different meaning. Section 5510 [R.C. 5733.21 and 5733.99] clearly contemplates that the officers of such corporation may continue to exercise the forbidden powers, privileges, and franchises, and provides a penalty for such exercise. It may, therefore, be inferred that the Legislature recognized a measure of vitality in the corporation, and that it intended to penalize *the continued exercise of powers which would be valid,* though interfering with the primary purpose which the legislature had in mind. [115 Ohio St., at 273-274; emphasis added.]

"In Section 5512 [R.C. 5733.23] the evidence of the existence of life becomes still stronger, and the purpose of the Legislature in the opening sentence of that section becomes manifest. That section states that it is an additional power to those granted in the previous sections, and that it creates an additional remedy 'for the collection of any taxes or fees due, under the provisions of this act.' [115 Ohio St., at 274-275.]

"If the Legislature had intended to clothe the secretary of state with full power to finally cancel, forfeit, and annul corporate franchises, there was no occasion for the further enactment of Section 5513 [R.C. 5733.24]. [115 Ohio St., at 276.]

"* * *

"It is not necessary in the instant case to determine whether the Legislature might confer upon the secretary of state the power to terminate the powers, privileges, and franchises of a corporation. It is sufficient to say that, when all these sections are construed together, the legislative intent is evident, and it becomes clear that it was not intended to confer that power upon the secretary of state further than to facilitate the filing of

reports and the collection of fees and taxes. It is quite clear that after February 15, 1924, the attorney general might have brought a suit to enjoin further transactions on the part of the corporation, and might have brought criminal proceedings for the collection of penalties, and it is equally clear that by Section 5513 [R.C. 5733.24] the final power to forfeit and annul corporate privileges and franchises was made to rest where it has always rested, in a court of competent jurisdiction, to be invoked by a proceeding in quo warranto." [115 Ohio St., at 277.]

Thus, it is apparent that the cancellation of the articles of incorporation by the Secretary of State for the nonpayment of taxes does not result in the extinction of the corporation; the corporation continues to exist as a legal entity. But even though it continues to so exist, does it have the legal capacity to bring suit while under suspension?

Two cases appear to answer that question in the affirmative: *E. G. Tillotson & Co.* v. *Ward, supra,* and *I. J. Goldstein Co.* v. *Mitchell, supra.* As it is said in paragraph one of the syllabus of this latter case:

"Where the charter powers of a corporation are cancelled under the provisions of section 5509, General Code [R.C. 5733.20], for failure to make its necessary reports and pay taxes, and later the corporation is reinstated by complying with Section 5511, General Code [R.C. 5733.22], during the time between such cancellation and reinstatement, the corporation is a *de facto* corporation, and one having contracted with it as such during such time cannot raise the question of its corporate capacity."

And again, at pages 233-234 of the report:

"There can be no question, from the authorities cited in 2 Cook on Corporations (7 ed.), Section 637, that the corporation was during all this time a *de facto* corporation, and that the defendant in error having contracted with it as such, can-

not raise the question of its inability to act as such. A large number of cases are cited to the effect that one who has taken a promissory note from a corporation whose charter powers have been suspended cannot raise that question by way of a defense to an action on the note. Other cases hold the same doctrine with respect to actions found on different kinds of contracts, as, for instance, *the collection of rent.*" (Emphasis added.)

From all that has been said above, it would seem that the plaintiff in this action continues to exist as a corporation, and possesses the legal capacity to sue. That being so, the action was properly commenced, and the judgment is not void. But if defendants' contentions are true, this result is an unfortunate one, since it has allowed the plaintiff to unlawfully operate as a corporation since December 15, 1977. During all of this time none of the public officials charged with the duty of preventing the unlawful operation have lifted a finger to stop it, and the above decisions prevent this court from doing what it can to prevent it. Thus, instead of instruments to be used in compelling the payment of fees and taxes, R.C. 5733.20 through 5733.24 have become a shield which permits the plaintiff to enjoy the privileges and immunities of its corporate status without paying any of the required fees and taxes. It is time for a second look at this problem, but this court does not have the authority to take that look; a new examination of the problem requires the attention of the Ohio Supreme Court, since only it can reverse or modify *Eversman, supra.*

What has been said above with respect to the plaintiff in this action assumes the truth of the defendants' contention that the plaintiff is a corporation whose articles of incorporation have been cancelled for failure to pay franchise

taxes. The evidence in this case, however, does not support that contention. As noted above, this action has been brought by the "GMS Management Co.," with a place of business at 5010 Mayfield Road, Cleveland, Ohio. But the certificate from the Secretary of State attesting to the cancellation of the articles of incorporation makes reference only to a "G.M.S. Management Corporation" which has its principal location in Lyndhurst. There is no evidence before this court which establishes that "GMS Management Co." and "G.M.S. Management Corporation" are one and the same entity; indeed, the defendants' motion papers completely beg the question. Of course, if they are one and the same, then it would appear that the "G.M.S. Management Corporation" brought this suit in a fictitious name, and that opens up other avenues which the defendants have not explored, but which will be discussed below. In any event, there is nothing before this court from which it could conclude that the plaintiff in this case is the corporation whose articles of incorporation were cancelled in December 1977.

Indeed, there is nothing before this court from which it could conclude that the plaintiff *is* a corporation. It does not describe itself as such in the pleadings, and corporate status cannot be inferred from its name. While it is true the R.C. 1701.04(A)(1) allows a corporation to describe itself as "Co." in its corporate name, it does not follow that every entity which describes itself as "Co." is a corporation. From all that appears from the record the "GMS Management Co." may be an individual or a partnership or some other group or entity bringing suit in a fictitious name. Under the provisions of R.C. 1329.10(B), any person doing business under a fictitious name may commence and maintain an action in that fictitious name in any court in this state on account of any contract made or transaction had in the fictitious name, provided that the fictitious name has been registered in compliance with R.C. 1329.01(C) and, where applicable, R.C. 1777.02. Of course, if there has been no compliance with these latter sections of the Revised Code, then the person bringing suit in the fictitious name lacks the legal capacity to do so, and if that lack of capacity is not cured by compliance with the statutory provisions prior to the entry of final judgment in such an action, the judgment will be void for failure of commencement. Accordingly, if "GMS Management Co." is the fictitious name in which G.M.S. Management Corporation is doing business and bringing suit, or if it is the fictitious name is which any other person is doing business and bringing suit, then the plaintiff (whoever it may be) lacks the legal capacity to bring such suit if there has been no compliance with R.C. 1329.01(C) and/or 1777.02. Normally, this lack of capacity to sue will result in the noncommencement of the action, and that in turn will result in the judgment being void. Defendants, however, have not presented this court with any evidence on this point, and as a consequence, this court cannot draw any conclusions from the plaintiff's use of "GMS Management Co." as the name in which suit is brought.

But even if the defendants had explored this avenue, there is the problem of waiver. Civ. R. 9(A) provides: "When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue * * *, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." Clearly, this makes nonexistence and lack of capacity to sue a defense to an action. The question, then, is this: Does Civ. R. 9(A) apply to an action in forcible entry and detainer?

Civ. R. 1(C) informs us that the Civil Rules, "to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * (3) in forcible entry and detainer, * * *." Or to put it both in reverse and in context: Civ. R.

9(A) will apply to actions in forcible entry and detainer if, by its nature, it is clearly applicable. A survey of the authorities suggests the following tests to be applied in cases such as this.

If the statute authorizing the special proceeding contains its own specific procedure to be followed in securing the remedy provided by the proceeding:

1. The rules procedure, in general, will supersede, replace, or supplement the statutory procedure if

a. the proceeding is adversary in nature, and there is no good and sufficient reason not to apply the rules procedure;

b. the statutory procedure relates to the management of the proceeding by the court or by the parties and does not prescribe a procedure that is essential to the protection of the rights of the parties; or

c. the application of the rules procedure would eliminate delay, unnecessary expense and all other impediments to the expeditious administration of the proceedings; but

2. The rules procedure, in general, will not be applicable if

a. the proceeding is non-adversary in nature;

b. the application of the rules procedure would abridge, enlarge, or modify any substantive right;

c. the application of the rules procedure would extend or limit the jurisdiction of the court;

d. the application of the rules procedure would serve no useful purpose or would be a meaningless duplication of the statutory procedure; or

e. the application of the rules procedure would frustrate the purpose of the proceeding, or would cause undue delay, unnecessary expense, or other impediment to the expeditious administration of the proceeding.

See *Jemo* v. *Garman* (1982), 70 Ohio St. 2d 267 [24 O.O.3d 358]; *Housing Authority* v. *Jackson* (1981), 67 Ohio St. 2d 129 [21 O.O.3d 81]; *Smith* v. *Wright* (1979), 65 Ohio App. 2d 101 [19 O.O.3d 301]; *Siegler* v. *Batdorff* (1979), 63 Ohio App. 2d 76 [17 O.O.3d 46]; *Lysaght* v. *Dollison* (1978), 61 Ohio App. 2d 59 [15 O.O.3d 77]; and *Cotterman* v. *Fahrig* (1972), 55 Ohio App. 2d 15 [9 O.O.3d 176].

An action in forcible entry and detainer is clearly adversary in nature; the application of a rule that makes nonexistence or lack of capacity to sue a defense will eliminate delay, unnecessary expense and all other impediments to the expeditious administration of the proceedings; and none of the reasons for the inapplicability of the rules procedure applies. Therefore, and especially in the light of what is said in *Jemo* v. *Garman, supra,* it may be concluded that Civ. R. 9(A) is applicable to this special statutory proceeding.

It must be recognized, of course, that Civ. R. 9(A) contemplates a written responsive pleading, and no written responsive pleading is required in a forcible entry and detainer action. But that fact alone does not render the rule inapplicable. As it is said in Civ. R. 12(B): "If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial any defense in law or fact to that claim for relief." This is wholly consistent with R.C. 1923.061(A), which provides: "Any defense in an action under Chapter 1923 of the Revised Code may be asserted at trial." Therefore, Civ. R. 9(A) is applicable to this proceeding, and the defense of nonexistence and/or the defense of lack of legal capacity to sue should have been presented at the trial of this case. But defendants acknowledge that no such defense was put forth, because they were unaware of the existence of these defenses at the time of trial. Accordingly, this court has little choice in the matter; it must conclude that these defenses were waived.

It may be, however, that the defense of lack of capacity is not waived if "GMS Management Co." proves to be a fictitious

name that has not been reported to the Secretary of State under the provisions of R.C. 1329.01(C). In *Cobble* v. *Farmers' Bank* (1900), 63 Ohio St. 528, the Ohio Supreme Court spoke to the effect of a statute analogous to R.C. 1329.10(B), and said at pages 539-540:

"[The plaintiff failed to register the fictitious name in which it transacted business with the defendant and in which it brought suit against him], and, therefore, was under a positive disability imposed by the statute to commence an action at the time the judgment was taken on the note. The provisions of the statute rest upon reasons of public policy; and it would have been the duty of the court, had its attention been called to the facts, to have refused to enter the judgment; and it would have been equally its duty to have set it aside, had a motion been made for that purpose by the maker of the note, notwithstanding the release of all errors contained in the cognovit. *It was not in his power to authorize the commencement of a suit against him in disregard to the provisions of law,* particularly where the judgment that might be rendered, would ef- fect the rights of his other creditors. *In contemplation of law, the judgment entered was no judgment as there was no party to the suit, in whose favor a valid judgment could be rendered.* (Emphasis added.)

Thus, if this action was brought in an unregistered fictitious name, the plaintiff lacked the legal capacity to bring it, and as a consequence no action was com- menced. This failure of commencement cannot be waived by the defendants because a waiver would violate the public policy underlying the statutory depriva- tion of capacity to sue. Therefore, if no ac- tion was commenced, the judgment is void. But if the judgment is void, no time limit applies to the service of a motion to vacate it, and if defendants can establish that this action was brought in an unregistered fictitious name, they may move to have the void judgment vacated.

As to their present motions before this court, however, they must be over- ruled for the reasons stated above. So ordered.

*Motions overruled.*