BAGLEY, Appellant,

v.

BAGLEY, Appellee.

[Cite as *Bagley v. Bagley*, 181 Ohio App.3d 141, 2009-Ohio-688.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 08–CA–57.

Decided Feb. 13, 2009.

Brown, Rowland & Kelly, L.L.P., Richard T. Brown, and Patricia N. Campbell, for appellant.

Rogers & Greenberg and L. Anthony Lush, for appellee.

———————

BROGAN, Judge.

{¶ 1} Ronald Bagley appeals from the judgment of the Greene County Common Pleas Court that granted his former spouse, Ellen, relief from the provisions of a qualified domestic relations order ("QDRO").

{¶ 2} The Bagleys were married in 1971 and had two children from their marriage. In 1995, the Bagleys obtained a dissolution of their marriage. The parties agreed in their separation agreement that Ellen would receive one-half of Ronald's military retirement benefits. When the QDRO was filed with the court on January 16, 1996, it provided that Ellen would forfeit the military pension if she remarried prior to the age of 55. Ellen remarried in August 2002 to John Barnett, and she stopped receiving her share of Ronald's military retirement benefit in October 2002.

{¶ 3} On March 7, 2007, Ellen filed a motion for relief from the provisions of the QDRO under Civ.R. 60(B)(5) and Civ.R. 60(A) and for clarification of the terms of the QDRO. She contended that she never intended to relinquish her premarital interest in Ronald's retirement benefits by signing the QDRO.

{¶ 4} Ronald moved for summary judgment on Ellen's motion and provided copies of correspondence from Ronald's previous counsel, John Huber, and from Ellen's counsel, James Owen. In a letter dated October 2, 1995, Huber wrote Ronald as follows:

{¶ 5} "In doing our drafting work for the QDRO, I will need your military ID number, your retired pay number, the date of your military commencement of service, and your middle name.

{¶ 6} "It is my understanding that Ellen is under the impression and apparently is agreeable that she would forfeit her pension rights to one-half of the pension in the event of her remarriage. In speaking with personnel at the base, it appears the QDRO can be written either way, depending on what the parties contemplate and are willing to agree to. It is, however, at least my recollection of our discussions that you intended that Ellen would continue to have her share in the pension despite the occurrence of her remarriage.

{¶ 7} "Give me a call at your earliest convenience so we can discuss these issues."

{¶ 8} On October 26, 1995, James Owen wrote Huber as follows:

{¶ 9} "We have a couple questions about the QDRO.

{¶ 10} "Paragraph D of the Decree implies that Ellen gets the full amount of the Survivor's Benefit if Ron dies after remarriage. Any new spouse of his will have other benefits available to her. Ellen will be contributing to the premiums, so she should receive all the benefits.

{¶ 11} "Also, we note that, since February 3, 1991, the tax withholdings are not deducted prior to computing 'disposable retired pay.' Therefore we propose QDRO changes as marked on the enclosed copy.

{¶ 12} "Please contact me."

{¶ 13} Owen made no mention of the provision in the QDRO that provided that his client would not receive Ronald's retirement benefits in the event of her remarriage.

{¶ 14} In support of his motion, Ronald also submitted the transcript from a deposition of Ellen that was taken on June 25, 2007. In the deposition, Ellen testified that she had not read the QDRO before signing it. She testified that she first became aware of the discrepancy between the QDRO and the separation agreement after the dissolution of her second marriage in October 2006. She admitted, however, that she stopped receiving one-half of Ronald's retirement benefits in October 2002. In January 2003, she wrote Ronald reminding him that she was to receive one-half of his retirement benefits and she requested that he reimburse her for the months of October, November, and December 2002. She reminded him that the separation agreement provided that she would receive the retirement benefits regardless of her recent remarriage to John Barnett. On January 22, 2003, Ronald responded to Ellen that the QDRO filed in January 1996 provided that her entitlement to one-half of his retirement benefit would end upon her remarriage.

{¶ 15} The trial court granted Ellen's motion for relief under both Civ.R. 60(B)(5) or Civ.R. 60(A) to remove any reference "to the remarriage clause" but ordered that her right to the pension would be as of the date of her motion for relief.

{¶ 16} In his first and second assignments of error, Ronald argues that the trial court erred in granting Ellen's motion. Ronald argues that the trial court should not have granted Ellen's motion, because it was not filed within a reasonable time. He also contends that she had no meritorious claim for relief because she read the QDRO and signed it voluntarily while represented by

counsel. Ronald also argues that Ellen should have appealed the QDRO if it failed to comport with the provisions of the separation agreement and dissolution decree.

{¶ 17} Ellen argues that the trial court properly granted her Civ.R. 60(B) relief because it was not proper for the QDRO terms to conflict with the express terms of the parties' dissolution decree.

{¶ 18} Civ.R. 60(B) states that "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules."

{¶ 19} In *GTE Automatic Elec. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, the Ohio Supreme Court set forth the factors necessary to recover under Civ.R. 60(B). "[T]he movant must demonstrate that (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken."

{¶ 20} Civ.R. 60(B)(5) is a residuary provision meant to permit relief in the interest of justice, where relief would not be available under any other provision of Civ.R. 60(B), but which may not be used as a substitute for any of those other provisions. *Antonopoulos v. Eisner* (1972), 30 Ohio App.2d 187, 59 O.O.2d 309, 284 N.E.2d 194.

{¶ 21} Assuming Ellen was guilty of excusable neglect in not reading more carefully the QDRO in 1996, it is clear that her motion for relief under Civ.R. 60(B)(1) was well beyond the one-year period provided by the rule. It is also clear that the QDRO did not need "clarification," because there was no ambiguity

in its terms. It clearly contradicted the terms of the parties' separation agreement. The trial court inappropriately used Civ.R. 60(A) to grant Ellen relief as that provision of the rule deals only with clerical mistakes or omissions.

{¶ 22} In granting Ellen's motion, the trial court relied on the Fifth District Court of Appeals opinion of *Himes v. Himes*, Tuscarawas App. No. 2004–AP–020009, 2004-Ohio-4666, 2004 WL 1948704. In that case, the court of appeals held that when a QDRO differs from the separation agreement that provided for property division, the QDRO is void ab initio and can be vacated by the court in accordance with its inherent authority. Thus, the court held the motion to vacate the QDRO does not have to comply with the general requirement of Civ.R. 60(B) motions and is void when in conflict with the terms of the separation agreement.

{¶ 23} The Fifth District in *Himes* cited with approval the Sixth District's earlier opinion in *Doolin v. Doolin* (1997), 123 Ohio App.3d 296, 704 N.E.2d 51. In *Doolin*, the wife filed a QDRO providing her with a greater portion of her husband's retirement plan than the separation agreement, incorporated into the court's judgment entry, provided her. The Sixth District held that retirement benefits accumulated during a marriage are subject to property division in a divorce proceeding. Therefore, because the trial court did not reserve jurisdiction to modify the property division, the trial court lacked subject-matter jurisdiction to adopt the QDRO, which modified the parties' separation agreement. As a result, the QDRO filed by the wife was void ab initio and could be vacated by the trial court in accordance with its inherent authority. Accordingly, the court held that the husband's motion to vacate the QDROs did not have to comply with the general requirements for motions seeking relief from judgment.

{¶ 24} Judge Resnick wrote as follows: "In the present case, the trial judge, by adopting the May 27, 1994 QDROs as her judgment, modified the division of appellee's pension benefits as agreed to by the parties and set forth in the divorce decree. That is, the court did not use the value of the pension benefits as of October 17, 1991. There is no reservation of continuing jurisdiction over this asset that would permit the court to make such a modification. *Schrader v. Schrader* (1995), 108 Ohio App.3d 25, 28, 669 N.E.2d 878, 879–880. Accordingly, the two QDROs of May 27, 1994 were void *ab initio* and could be vacated by the trial court pursuant to its inherent authority. *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 518 N.E.2d 941, paragraph four of the syllabus. Consequently, appellee's motion to vacate the void judgment did not have to comply with the requisites of Civ.R. 60(B). *United Home Fed. v. Rhonehouse* (1991), 76 Ohio App.3d 115, 123, 601 N.E.2d 138, 142–143; *Dairyland Ins. Co. v. Forgus* (1989), 58 Ohio App.3d 78, 79, 568 N.E.2d 1232, 1232–1233."

{¶ 25} While it is common to place contingencies such as no remarriage or cohabitation upon the continued receipt of alimony or spousal support, such

contingencies are not properly placed on payments that result from the division of property. *Zimmie v. Zimmie* (1984), 11 Ohio St.3d 94, 11 OBR 396, 464 N.E.2d 142. See also R.C. 3105.171(J).

{¶ 26} A QDRO is merely an order in aid of execution on the property division *ordered* in the divorce or dissolution decree. So long as the QDRO is consistent with the decree, it does not constitute a modification, which R.C. 3105.171(I) prohibits, and the court does not lack jurisdiction to issue it. *Tarbert v. Tarbert* (Sept. 27, 1996), Clark App. No. 96–CA–0036, 1996 WL 555039. We recently adopted the reasoning of the *Himes* court and the *Doolin* court in *Hale v. Hale,* Montgomery App. No. 21402, 2007-Ohio-867, 2007 WL 625813.

{¶ 27} In *Hale,* we held that early supplemental retirement benefits that were part of a General Motors pension were properly divisible as marital property because they were earned during the marriage and in order to be excludable from the benefits divided by the QDRO, there must have been a specific exclusion of them in the settlement agreement incorporated in the decree. We held that when the QDRO is inconsistent with the decree, the trial court lacks jurisdiction to issue it, and it is void. Appellant's first and second assignments of error are overruled.

{¶ 28} In his third assignment of error, Bagley contends that the trial court abused its discretion in failing to have an evidentiary hearing on Ellen's Civ.R. 60(B) motion. Because we have found that the trial court lacked jurisdiction to modify a property division provided in the dissolution decree and the facts are undisputed that the QDRO did so modify the property division, a hearing was unnecessary. The third assignment of error is overruled.

{¶ 29} In his fourth assignment of error, Ronald argues that the trial court abused its discretion in denying him access to James Owen's correspondence with his client, Ellen. R.C. 2317.02(A) provides the exclusive means by which privileged communications between an attorney and a client can be waived. *State v. McDermott* (1995), 72 Ohio St.3d 570, 573–574, 651 N.E.2d 985. That statute provides as follows:

{¶ 30} "The following persons shall not testify in certain respects:

{¶ 31} "(A) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client and except that, if the client voluntarily testifies or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject."

{¶ 32} Ellen did not expressly consent to having Owen produce correspondence between them during the dissolution proceedings. She did not waive the privilege by filing her motion for relief from the QDRO. She did not voluntarily testify about her conversations or correspondence with Owen. The fourth assignment of error is overruled.

{¶ 33} In his last assignment of error, Ronald argues that the trial court abused its discretion by failing to hear testimony related to "equitable" considerations based upon the totality of the circumstances. It is, however, fundamental that equity follows the law. As we have indicated earlier, a QDRO is not designed to alter the decree but to implement it. Ronald benefitted for years from the modification made in the QDRO to the retirement benefits to which Ellen was entitled. She, however, sought relief from that order from the date of her motion. It was Ronald who benefitted from the QDRO's modification of the decree, not Ellen. This assignment is overruled.

{¶ 34} The judgment of the trial court is affirmed.

Judgment affirmed.

Donovan, P.J., and Fain, J., concur.

Fain, Judge, concurring.

{¶ 35} I write separately merely to decry the tendency of Ohio courts, including, alas, this one, to jurisdictionalize error.

{¶ 36} The subject-matter jurisdiction of Ohio courts of common pleas, set forth in R.C. 3105.011, is very broad:

{¶ 37} "The court of common pleas including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters. This section is not a determination by the general assembly that such equitable powers and jurisdiction do not exist with respect to any such matter."

{¶ 38} In exercising the broad subject-matter jurisdiction conferred upon them in domestic-relations cases, courts of common pleas are subject to numerous statutory requirements and restrictions. One of these is found in R.C. 3105.171(I):

{¶ 39} "A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court."

{¶ 40} If this were a case of first impression, I would not be persuaded that this restriction, which is not expressly related to subject-matter jurisdiction, was intended to affect the subject-matter jurisdiction of the trial court. I would be of

the view that an order violating this restriction constitutes reversible error, and is voidable, but not void.

{¶ 41} Unfortunately, this is not a case of first impression in our court. In *Hale v. Hale,* Montgomery App. No. 21402, 2007-Ohio-867, 2007 WL 625813, we held that when a trial court violates this particular statutory restriction, it not merely commits reversible error, it exceeds the otherwise very broad subject-matter jurisdiction that has been conferred upon it to deal with domestic-relations controversies. Under the principle of stare decisis, I am not persuaded that the majority is wrong in deciding to follow the holding in *Hale v. Hale,* so I concur in the judgment.

{¶ 42} The problem with jurisdictionalizing errors that a trial court may make in the exercise of its jurisdiction is the resulting undermining of the efficacy and finality of judicial judgments and orders. Even a century after an erroneous judgment or order has been pronounced, which all of the parties decided to live with at the time, anyone who can demonstrate that he or she is adversely affected by the ancient judgment or order may collaterally attack it, since that person is merely asking the court to recognize that a judgment or order long ago entered upon its journal is, in fact, void.

{¶ 43} A QDRO ought to be considered as just one example of an order in aid of execution of an underlying judgment, which, like any order "affect[ing] a substantial right made * * * upon summary application in an action after judgment,"[1] may be appealed, and, if found to be legally erroneous, may be reversed on appeal. The reason a QDRO, unlike other orders in aid of execution, has acquired this special distinction of being void, not just voidable, if erroneous, is probably because of the historical fact that awards of alimony, later called spousal support, were modifiable only if the original award included a provision for its subsequent modification. That language was typically a reservation of "jurisdiction" to modify the award in the future. But in using the word "jurisdiction" in this context, I do not believe it was intended to implicate subject-matter jurisdiction. I believe it was only intended to mean that a subsequent modification of the award would be proper, and not contrary to law, so long as "jurisdiction" to modify the award was reserved in the original award.

{¶ 44} I sense that I am a voice in the wilderness, but the tendency to denigrate the efficacy and finality of judicial orders and judgments by treating them as void, and not merely voidable, when they are erroneous is, in my view, a serious problem that will only get worse as more and more kinds of error are determined to implicate subject-matter jurisdiction. In this connection, it is worth recalling that the subject-matter jurisdiction of the courts of common pleas

---

1. R.C. 2505.02(B)(2).

in this state is the exclusive province of the General Assembly. *State ex rel. Miller v. Keefe* (1958), 168 Ohio St. 234, 6 O.O.2d 18, 152 N.E.2d 113; *In re Protest of Brooks,* 155 Ohio App.3d 384, 2003-Ohio-6525, 801 N.E.2d 514.