[Cite as *Pearl v. Pearl*, 2012-Ohio-4752.]

IN THE COURT OF APPEALS OF CHAMPAIGN COUNTY, OHIO

| | | |
|---|---|---|
| BARBARA J. PEARL | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2012-CA-6 |
| vs. | : | T.C. CASE NO. 03-DR-70 |
| BENNY J. PEARL | : | (DOMESTIC RELATIONS APPEAL FROM COMMON PLEAS) |
| Defendant-Appellant | : | |

· · · · · · · · ·

# O P I N I O N

Rendered on the 12th day of October, 2012.

· · · · · · · · ·

Ronald C. Tompkins, Atty. Reg. No. 0030007, 19 Pearce Place, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

Anthony E. Kohler, Atty. Reg. No. 0032826, 210 North Fountain Avenue, Springfield, Ohio 45504
    Attorney for Defendant-Appellant

· · · · · · · · ·

GRADY, P.J.:

{¶ 1}  This is an appeal from a final order of the domestic relations court that modified a qualified domestic relations order ("QDRO") the court previously entered, on a finding that the QDRO was inconsistent with the underlying decree of dissolution, and that ordered a new and different division and distribution of pension retirement benefits.

{¶ 2} Barbara J. Pearl and Benny J. Pearl were married in 1981. On June 9, 2003, their marriage was terminated by a decree of dissolution. [Dkt. 3}. The decree incorporated the parties' separation agreement. [Dkt. 2]. The separation agreement provides:

The husband has a 401(k) through his place of employment, International Harvester, with an approximate value of $45,000. The wife shall receive one-half of the 401(k) and one-half of the husband's pension benefits for 21 of the husband's 40 years of employment at IH by QDRO fashioned by her attorney and approved by the company.

{¶ 3} Benny[1] was not represented by counsel in the dissolution proceeding. The QDRO prepared by Barbara's attorney, which Benny signed, and ordered by the court on October 8, 2004 [Dkt. 10], provided:

2. The benefit payable to the Alternate Payee from the Plan shall be 50% of the vested accrued benefit of Participant ("the Alternate Payee Benefit") as of June 9, 2003.

{¶ 4} Barbara was entitled to receive benefits under Benny's pension plan while he remained working. Benny continued working until early 2011, when he retired and learned that the benefit Barbara had received pursuant to the QDRO was 50% of his entire pension benefit, not 50% of the benefit that accrued during the 21 years they were married, as provided in their separation agreement. As a result, Benny's benefit was reduced by the pension plan.

---

[1]For clarity and convenience, the parties are identified using their first names.

**{¶ 5}**  Benny moved to modify the QDRO to conform to the terms of the separation agreement.   Benny contended that, as a result of the error in the QDRO, he will receive $250 to $300 per month less than the retirement benefit to which he would otherwise be entitled. The court set Benny's motion for hearing.   In a motion to continue the hearing, Barbara contended that the pension plan was now withholding $690 from her monthly benefit to recoup the overage she was paid, which reduced her monthly benefit to $317.55.

**{¶ 6}**  It was undisputed that the QDRO was inconsistent with the separation agreement and decree, and that Barbara was overpaid as a result.   The point in dispute was how to fashion a new QDRO to take account of the overpayment to Barbara.

**{¶ 7}**  The pension plan reported that only three options were available.   The first would repay the plan from Barbara's share first, reducing her benefit to zero, with any additional amount necessary taken from Benny's share, and providing no survivor benefits for Barbara.   The second option would repay the amount from Benny's share and also reduce Barbara's share.   Benny would then receive $1,110.80 per month, and Barbara would receive $221.60 without survivor benefits, or $183.29 with survivor benefits.   The third option would require Barbara to repay the plan in a lump-sum amount of $26,356.65 and establish new benefit payments consistent with the separation agreement.   If none of the three options were adopted, payments would continue in accordance with the 2004 QDRO.   The parties submitted the three options for the court's consideration.

**{¶ 8}**  On January 13, 2012, the court journalized a judgment, stating:

> Both counsel agreed that Option Three, which is a lump sum payback
> by Barbara J. Pearl is not feasible and should not be considered.

Barbara J. Pearl argues Option Two should be used which reduces her share, depending upon whether or not a survivorship benefit is available, to either $221.69 or $183.29 per month. Benny J. Pearl would receive $1,110.80 per month under either of those scenarios.

Benny J. Pearl argues Option One should be used which reduces Barbara J. Pearl's share to zero ($0.00) dollars per month with no survivorship possibility and sets Benny J. Pearl's share at $1,335.18 per month.

The Plan notes that Option One seeks to recoup their overpayment from Barbara J. Peal's (sic) share while Option Two seeks to recoup the overpayment from Benny J. Pearl's share.

It would be easy to say Barbara J. Pearl was the one that was overpaid so she should be the one that bears the loss to fix the situation. However, the Court believes that it must look to the original intent of the parties in guiding its decision to modify the QDRO not just who owes the Plan.

Although the Plan is only concerned with being paid back and by whom, the Court believes its role is to modify the QDRO in an acceptable way to the Plan which most accurately reflects the parties' intentions at the time they created the QDRO during their dissolution. In that light, the Court believes Option One fails to reflect two aspects of the parties' original intent. First, that Barbara J. Pearl would receive a portion of Benny J. Pearl's pension for her retirement and, second, that if Benny J. Pearl predeceased her that there would be some survivor benefit. Option One provides that her benefit is

reduced to zero ($0.00) dollars and no survivorship benefit is available. Option Two provides for some benefit to be paid to her, albeit reduced and does provide for a survivor benefit.

For all these reasons, IT IS ORDERED AND ADJUDGED that the parties shall modify the QDRO as provided for in Option Two; however, Barbara J. Pearl shall select the benefit of $183.29 per month which allows for survivor benefits. [Dkt. 44].

**{¶ 9}** Benny filed a notice of appeal from the final order of January 13, 2012.

**{¶ 10}** Assignment of Error:

"THE TRIAL COURT DIVIDED THE HUSBAND'S PENSION INEQUITABLY BOTH IN THE IMPLEMENTATION OF THE ORIGINAL QDRO AS WELL AS THE CURRENT QDRO, BOTH OF WHICH ARE VOID."

**{¶ 11}** A QDRO implements the court's order dividing a pension plan in a decree of divorce or dissolution. *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16. That division is not subject to future modification by the court except upon the express written consent or agreement of both spouses. R.C. 3105.171(I); R.C. 3105.65(B). A QDRO which is inconsistent with a division ordered in the decree of divorce or dissolution operates to modify the decree, and per R.C. 3105.171(I) the court lacks jurisdiction to enter the QDRO. *Bagley v. Bagley*, 181 Ohio App.3d 141, 2009-Ohio-688, 908 N.E.2d 469. A QDRO modifies the decree when the QDRO varies from, enlarges, or diminishes the division and disbursement of retirement benefits ordered in the decree. *Wilson*.

{¶ 12} The parties agree that the QDRO was inconsistent with the decree because it failed to implement the coverture factor (21 of Benny's 40 years of employment) ordered in the decree. Benny argues that the modifications the court ordered on January 13, 2012 are likewise inconsistent with the decree because they impose some part of the cost of the overage Barbara was paid under the QDRO on him, reducing his benefit, instead of wholly on Barbara, who benefitted from the overage. Furthermore, Benny points out, the QDRO was prepared by Barbara's attorney, and the error is therefore chargeable to Barbara.

{¶ 13} Benny was unrepresented in the dissolution proceeding. However, Benny signed the QDRO as well as a Waiver of Attorney acknowledging his "complete understanding that the attorney herein represents the Petitioner-Defendant Barbara J. Pearl." [Dkt. 2]. Any prejudice Benny suffered in consequence of that fact is chargeable to Benny as well as to Barbara.

{¶ 14} The modifications the court ordered vary from the division and disbursement of retirement benefits ordered in the decree, to the extent that Benny's share of his pension will be $1,110.80 per month instead of $1,335.18. Barbara's share is likewise reduced. Those changes were ordered by the court to preserve some benefit for Barbara, as well as her survivor rights, which the court found were material to the separation agreement the parties reached.

{¶ 15} On the authority of our holding in *Bagley*, any QDRO containing the new provisions for division and distribution of Benny's pension retirement benefit that the court ordered, being different from the separation agreement, is necessarily void for lack of jurisdiction. However, any QDRO containing the modifications that Benny urged the court to

order, consistent with option one, would likewise be void under *Bagley* because, in denying Barbara her continuing right to a share of Benny's pension and her survivor rights, the new QDRO would also vary from the separation agreement.

{¶ 16} The conundrum this presents illustrates the point made by the concurring opinion in *Bagley*: that "jurisdictionalizing" error undermines the finality of orders, and that a QDRO is no different from any other order "[a]ffect[ing] a substantial right made * * * upon a summary application in an action after judgment," R.C. 2505.02(B)(2), and is therefore a final order subject to review for errors of law pursuant to R.C. 2505.03(A). On that basis, a QDRO that violates the prohibition against modifications in R.C. 3105.171(I) is not void, but voidable for error only.

{¶ 17} We are persuaded that the concurring opinion in *Bagley* is the sounder view. Therefore, we overrule our holding in *Bagley*, that a QDRO which varies from the division of pension plan benefits ordered in a decree of divorce or dissolution in violation of R.C. 3105.171(I) is void for lack of jurisdiction, and hold that the violation is voidable for error. Being voidable for error, the QDRO is an order subject to appeal for review of the error concerned.

{¶ 18} Benny took no appeal from the QDRO the court ordered in 2004. Because that QDRO is a final order, it is not subject to subsequent modification by the court absent some express agreement by the parties in their separation agreement incorporated into the decree of dissolution that the court retains the power to modify the division and distribution of Benny's pension retirement benefits. *In re Whitman*, 81 Ohio St.3d 239, 690 N.E.2d 535 (1998). No such authority was retained.

{¶ 19} The domestic relations court erred when it modified the QDRO it ordered in 2004 to provide for a new and different division and distribution of Benny's pension retirement benefits. The judgment of January 13, 2012 will be reversed. The cause will be returned to the domestic relations court on our special mandate to reinstate the terms of the QDRO which the court previously ordered in 2004.

Fain, J., and Donovan, J., concur.

Copies mailed to:

Ronald C. Tompkins, Esq.
Anthony E. Kohler, Esq.
Hon. Brett A. Gilbert