[Cite as *Murphy v. Murphy*, 2021-Ohio-101.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

LARRY R. MURPHY,

    PLAINTIFF-APPELLEE,               CASE NO.  13-20-10

    v.

HELEN L. MURPHY,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Domestic Relations Division
Trial Court No. 15 DR 0011

Appeal Dismissed in Part; Judgment Reversed
and Cause Remanded

Date of Decision:   January 19, 2021

APPEARANCES:

    *John M. Kahler, II* for Appellant

**PRESTON, J.**

{¶1} Defendant-appellant, Helen L. Murphy ("Helen"), appeals the June 3 and June 5, 2020 judgments of the Seneca County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, we dismiss Helen's appeal in part. However, insofar as the remainder of Helen's appeal is properly before this court, we reverse.

{¶2} Helen and plaintiff-appellee, Larry R. Murphy ("Larry"), wed on July 19, 1986. (Doc. No. 2). In March 2014, Helen and Larry separated. (Doc. Nos. 4, 16). On January 20, 2015, Larry filed a complaint for divorce. (Doc. No. 2). On February 13, 2015, Helen filed her answer to Larry's complaint as well as a counterclaim for divorce. (Doc. No. 15).

{¶3} The final divorce hearing was held on December 2, 2015. (*See* Doc. No. 38). On January 19, 2016, the magistrate filed his decision, in which he recommended that Helen and Larry be granted a divorce from each other. (*Id.*). The trial court adopted the magistrate's recommendation that same day. (*Id.*). Consequently, Helen and Larry were granted a divorce from each other. (*Id.*). Furthermore, as relevant to this appeal, Helen was to receive "62.5% of [Larry's] Ohio Public Employee Retirement System [("OPERS")] pension/retirement, with [Larry] cooperating fully to secure a Division of Property Order [("DOPO")] or similarly required court order * * * to effectuate the transfer of these funds from

[Larry] to [Helen] in accordance with the rules and regulations of [OPERS]." (*Id.*). Helen was also to receive "100% of [Larry's] deferred compensation fund/benefits that he had accrued through December 2, 2015 * * *." (*Id.*). The judgment entry went on to provide that "[w]ithin 30 days the parties will take all necessary steps to transfer legal title and possession of property and take appropriate actions to implement and effectuate the division of pensions and retirements." (*Id.*).

{¶4} On March 3, 2017, Helen filed a motion titled "Motion to Re-Open." (Doc. No. 40). In support of her motion, Helen claimed that she had "attempted to obtain the property granted to her in the parties' final judgment of divorce," specifically the 62.5 percent share of Larry's OPERS account, but that "OPERS will not honor the court order." (*Id.*). She argued that it was therefore necessary to reopen the case in order "to reconfigure the order to effectuate the original intent of the parties." (*Id.*).

{¶5} On August 23, 2017, the trial court filed two orders relating to Larry's OPERS and deferred compensation accounts. First, the trial court filed a Qualified Domestic Relations Order ("QDRO"), which "assign[ed] to [Helen] an amount equal to one hundred percent (100%) of [Larry's] Total Account Balance accumulated under the [Deferred Compensation] Plan as of December 2, 2015 * * *." (Doc. No. 56). The QDRO was signed by Helen and Larry and by their attorneys. (*Id.*). In addition, the trial court filed a DOPO, which directed OPERS

to pay Helen "fifty percent (50%) of a fraction * * * of [Larry's] periodic benefit or one-time lump sum payment" or, alternatively, "fifty percent (50%) of a fraction * * * of [Larry's] periodic benefit and fifty percent (50%) of a fraction * * * of [Larry's] lump sum benefit." (Doc. No. 55). The DOPO was signed by Helen's attorney and Larry's attorney. (*Id.*). In a later proceeding, Helen's attorney offered the following explanation for why the DOPO directed OPERS to pay Helen 50 percent of Larry's OPERS account, rather than 62.5 percent as required by the terms of the divorce decree:

> We originally had an agreement that, I believe, [Helen] was going to receive two-thirds [sic] of [Larry's] [OPERS]. Once it was submitted to [OPERS], we learned that that was not permissible and that the most that she could receive was 50 percent. And without receiving anything more or renegotiating the deal, Helen said, "Fine, I'll just take the 50 percent."

(Jan. 9, 2020 Tr. at 55). After the trial court filed the DOPO and the QDRO, Helen withdrew her "Motion to Re-Open" on August 28, 2017. (Doc. No. 58). Neither Helen nor Larry filed an appeal from the trial court's issuance of the DOPO or QDRO.

{¶6} On July 3, 2018, Helen filed a motion for contempt. (Doc. No. 62). In support of her motion, Helen argued that Larry "failed to follow through on the

necessary paperwork to effectuate the division of his deferred compensation as ordered in the Final Judgment for Divorce filed January 19, 2016." (*Id.*).

{¶7} At an August 13, 2018 show-cause hearing, the parties represented that they had reached an agreement. First, it was noted that Larry had signed an amended QDRO. (Aug. 13, 2018 Tr. at 2); (Doc. No. 70). Helen's attorney then recited the parties' agreement for the record:

> As a condition of [Helen] agreeing to dismiss the contempt and waive pursuit for reimbursement for attorney fees and reimbursement for court costs and having the special process server to find [Larry], my understanding is [Larry] agrees and consents to do whatever is required of him to enable [Helen] to obtain her *one-half of the Deferred Compensation* referenced in the parties' final judgment for divorce. He has signed an authorization and release of account information. We believe that in order for [Helen] to obtain her one-half of that account in a lump sum, that means that [Larry] would have to agree to take his one-half of the account in a lump sum, and that he would do so forthwith and provide us the information so we can get her *half of the Deferred Comp*. So once we have that, * * * that's part and parcel of the agreement for us to dismiss the contempt.

(Emphasis added.) (Aug. 13, 2018 Tr. at 2-3). Larry's attorney stated that "[t]hat [was] [their] understanding" of the agreement, and he further stated that Larry had "signed both the [amended QDRO], and also the authorization for release of account information" and that he "believe[d] that by doing so, [Larry had] fully purged [himself] of the [contempt filing]." (*Id.* at 4-5). On August 31, 2018, Helen filed a notice of dismissal of her motion for contempt. (Doc. No. 68). The trial court filed the amended QDRO on September 27, 2018. (Doc. No. 70). Under the amended QDRO, Helen was still assigned "an amount equal to one hundred percent (100%) of [Larry's] Total Account Balance accumulated under the [Deferred Compensation] Plan as of December 2, 2015 * * *." (*Id.*).

**{¶8}** On May 15, 2019, Helen filed a second motion for contempt. (Doc. No. 75). In support of her motion, Helen argued that Larry had again failed to complete the paperwork necessary to effectuate the division of his OPERS account. (*Id.*). She noted that "[a] [DOPO] was filed August 23, 2017, granting [her] 50 percent of [Larry's] OPERS Retirement Plan," and she maintained that Larry had "retired but * * * failed to complete the necessary paperwork to authorize the Refund Authorization required by OPERS." (*Id.*).

**{¶9}** On October 9, 2019, Helen, who had obtained new counsel, filed a motion to journalize the agreement that her former attorney read into the record at the August 13, 2018 show-cause hearing. (Doc. No. 91). Helen maintained that

when her former attorney read the agreement into the record, he "misspoke when he referenced the 'Deferred Compensation' plan" and that he "meant to say 'the Ohio Public Retirement System plan.'" (*Id.*). She further argued that her attorney and Larry's attorney "understood that their agreement was for [Larry] [to] take his OPERS in a lump sum, not his Deferred Comp." (*Id.*). She noted that because the "Deferred Comp had already been resolved by the signing of the amended [QDRO]" and because she "was to receive 100% of the Deferred Comp, not 50%," "[i]t would not have made sense for the parties to agree that [Larry] would take his one-half of the Deferred Comp so that [she] can get her one-half of the Deferred Comp when [she] was already going to receive 100% of the Deferred Comp." (*Id.*). Helen stated that because the parties' agreement was never journalized, she could not file a motion for contempt. (*Id.*). She therefore requested that the agreement be journalized "as intended * * * [so that Larry could be required] to cooperate as may be * * * necessary in order to see that [she] receives he[r] 50% share of the OPERS in a lump-sum payment as soon as possible." (*Id.*).

{¶10} On October 11, 2019, Larry filed a motion to dismiss Helen's motion to journalize the parties' agreement. (Doc. No. 92). Larry argued that "there was no agreement for him to make an early withdrawal from his OPERS" and that "[t]he agreement referenced by [Helen] was for [his] cooperation with [Helen] to obtain her awarded portion of [his] Deferred Compensation." (*Id.*). He maintained that he

complied with the agreement "on or before the August 13, 2018 hearing" and that all of his retirement accounts, including his deferred compensation account, "were divided, per the agreement and [the] Court's Orders, before [Helen] filed her Motion to Show Cause and Motion to Journalize Agreement." (*Id.*).

{¶11} On October 17, 2019, Helen withdrew her second motion for contempt. (Doc. No. 94).

{¶12} A hearing on Helen's motion to journalize was held before the magistrate on January 9, 2020. The next day, January 10, 2020, the magistrate issued his decision. (Doc. No. 101). The magistrate found that Helen and Larry "did, in fact, agree that [Larry] would take whatever steps were necessary to allow [Helen] to obtain a lump sum payment from OPERS, in exchange for the dismissal of the first Motion for Contempt, and not pursuing attorney fees and court costs against [Larry] for his willful violation of the [judgment entry of divorce]" and that "[a]ny argument that this was not the actual intent of the parties is disingenuous." (*Id.*). Nevertheless, the magistrate found that Helen "waived her right to the journalization of that agreement when she did not ask that it be journalized at the time the agreement was made." (*Id.*). The magistrate noted that Helen "took the chance that [Larry], who already had a history of non-compliance, would come through on his promise, and he did not." (*Id.*). Thus, the magistrate recommended that Helen's motion to journalize be denied. (*Id.*).

{¶13} On January 22, 2020, Helen filed her objection to the magistrate's decision. (Doc. No. 102). While the magistrate's January 10, 2020 decision addressed matters other than Helen's motion to journalize, such as a motion to terminate spousal support filed by Larry in November 2019, Helen objected only "to that portion of the [magistrate's decision] recommending that the motion to journalize agreement * * * be denied." (*Id.*). Helen filed a memorandum in support of her objection on February 24, 2020. (Doc. No. 106). In her memorandum, Helen observed that the magistrate "cited no authority for his conclusion * * * that [she] waived her right to have the * * * agreement journalized by not asking that it be done at the time the agreement was made." (*Id.*). She argued that while "the parties *should* have journalized their agreement sooner," it "d[id] not follow that the parties *must* have journalized their agreement immediately." (Emphasis sic.) (*Id.*).

{¶14} Also on January 22, 2020, Helen filed a motion titled "Motion for Order Regarding Joint and Survivorship Annuity" ("Annuity Motion"). (Doc. No. 103). In this motion, Helen asked that Larry be ordered to "designat[e] [her] as the beneficiary on [a] joint and survivor annuity plan of payment to receive a lifetime allowance which is fifty percent * * * of [Larry's] reduced monthly allowance under the joint and survivor annuity plan of payment." (*Id.*). Helen argued that "[t]he proposed order would safeguard [her] share of [Larry's] OPERS retirement funds even in the event of [his] premature death" and that the order would "obviate the

need for [her] request to journalize the parties' oral agreement regarding a lump sum payout of the OPERS funds." (*Id.*).

{¶15} On June 3, 2020, the trial court issued its judgment on Helen's objection to the magistrate's decision. (Doc. No. 107). The trial court started its decision by stating that "[u]pon review of the pleadings, memorandum, transcript[,] and relevant law, the Court finds the Objection well-taken and it is sustained." (*Id.*). Yet, the trial court ultimately agreed with the magistrate and ordered that Helen's motion to journalize be denied. (*Id.*). Moreover, although neither party had raised the issue, the trial court proceeded to "vacate[] as void" all orders of the court entered subsequent to the filing of the judgment entry of divorce on January 19, 2016. (*Id.*). The trial court explained its reasoning for vacating these orders as follows:

1. The parties were divorced by this Court through a Judgment Entry filed on January 19, 2016 (the "Entry"). The Entry granted [Helen] 62.5% of [Larry's] [OPERS account]. * * * [T]he Entry granted to [Helen] 100% of [Larry's] Deferred Compensation Account.

* * *

3. After the filing of the Entry, [Helen] filed a "Motion to Re-Open" on March 3, 2017, asking the Court to re-open the case

"because of the inability to effectuate the intent of the property division."

4.   The Motion to Re-Open did not cite the Court to any legal authority it would have to "re-open" a final appealable order. No factors listed under [Civ.R. 60(B)] were discussed in the Motion to Re-Open.

5.   Despite this, [the magistrate] set the matter for a hearing, which was to be held on August 21, 2017, but was continued upon motion of the parties.

6.   On August 23, 2017, [the DOPO] was filed, which altered the distribution of [Larry's] retirement assets as previously ordered in the Entry. This was done in error, as the Court was divested of jurisdiction to modify the Entry absent an analysis under appropriate Ohio law.

7.   All actions taken in this case subsequent to the Entry with relation to [Larry's] retirement assets are thus void, because [the] Court lacked the jurisdiction to modify the Entry based upon the "Motion to Re-Open."

(*Id.*). The trial court directed Helen and Larry to "continue to follow the distribution of property as set forth in the [judgment entry of divorce], absent a proper analysis

under Ohio law to allow this Court to otherwise modify a final, appealable order."

(*Id.*).  Finally, on June 5, 2020, the trial court dismissed Helen's Annuity Motion

without prejudice "[i]n light of" its June 3, 2020 judgment.  (Doc. No. 108).

{¶16} On June 26, 2020, Helen filed a notice of appeal.[1]  (Doc. No. 109).

She raises two assignments of error for our review.

### Assignment of Error No. I

**The trial court abused its discretion by dismissing appellant's motion to journalize agreement and voiding all orders subsequent to the parties' final divorce decree including qualified domestic relations order and division of property orders.**

{¶17} In her first assignment of error, Helen argues that the trial court erred

both by vacating all orders entered subsequent to the January 19, 2016 judgment

entry of divorce and by dismissing her Annuity Motion.  Specifically, Helen argues

that "[t]he trial court erroneously found that it did not have jurisdiction to accept

and order a [QDRO] or [DOPO]."  (Appellant's Brief at 14).  She notes that she and

Larry consented to the modifications contained in the DOPO and that the "propriety

of the [DOPO] * * * was never challenged by either party" in the trial court or on

appeal.  (*Id.* at 11-12).  Helen further argues that "[e]ven if the DOPO were defective

* * *, the QDRO[s] [were] not defective" because the "QDRO[s] did not alter the

distribution of [Larry's] retirement assets as previously ordered in the final decree

---

[1] We note that Larry failed to file an appellate brief in this matter.

of divorce." (*Id.* at 13). Lastly, Helen maintains that the trial court erred by dismissing her Annuity Motion because "[t]he only reason the trial court gave for the dismissal was that it was done 'in light of the Judgment Entry filed on June 3, 2020'" and "the trial court's reasoning for the orders issued in the [June 3, 2020 judgment entry] is flawed." (*Id.* at 14).

**{¶18}** "[A] trial court has the inherent authority to set aside a void judgment sua sponte." *Deutsche Bank Trust Co. v. Pearlman*, 162 Ohio App.3d 164, 2005-Ohio-3545, ¶ 14 (9th Dist.), citing *In re Witherell*, 9th Dist. Lorain No. 01CA007936, 2002-Ohio-2328, ¶ 8, citing *Patton v. Diemer*, 35 Ohio St.3d 68 (1988), paragraph four of the syllabus. Thus, although neither Helen nor Larry asked the trial court to vacate the orders at issue in this case, the trial court had the power to do so, provided that it correctly determined that the orders are void. "The determination of whether a judgment is void is a question of law." *State v. Hartley*, 10th Dist. Franklin No. 15AP-192, 2016-Ohio-2854, ¶ 6, citing *Blaine v. Blaine*, 4th Dist. Jackson No. 10CA15, 2011-Ohio-1654, ¶ 19 and *State v. Jones*, 9th Dist. Summit No. 26854, 2013-Ohio-3710, ¶ 6. When reviewing questions of law "we must apply a de novo standard of review without deference to the trial court's decision." *State ex rel. Yost v. Volkswagen Aktiengesellschaft*, 10th Dist. Franklin No. 19AP-7, 2019-Ohio-5084, ¶ 12, *appeal allowed*, 158 Ohio St.3d 1450, 2020-

Ohio-1090, citing *Bailey v. Manor Care of Mayfield Hts.*, 8th Dist. Cuyahoga No. 99798, 2013-Ohio-4927, ¶ 12.

{¶19} In this case, the catalyst for the trial court's decision to vacate all orders entered after the January 19, 2016 judgment entry of divorce was its conclusion that the DOPO is void because it modified the distribution of Larry's OPERS account as ordered in the judgment entry of divorce. Insofar as the trial court recognized that a DOPO generally cannot be used to modify the property division in a divorce decree, the trial court was correct. "A DOPO 'is an order that creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a [retirement] plan.'" *Estate of Parkins v. Parkins*, 3d Dist. Allen No. 1-18-50, 2019-Ohio-1941, ¶ 37, quoting *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, ¶ 18. "A DOPO 'merely implement[s] a trial court's decision of how a pension is to be divided incident to a final divorce entry.'" *Fiedler v. Fiedler*, 2d Dist. Montgomery No. 26921, 2016-Ohio-5349, ¶ 11, quoting *Rice v. Rice*, 8th Dist. Cuyahoga No. 95221, 2011-Ohio-1366, ¶ 7, citing *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, ¶ 7. "The entry of divorce divides the property; the [DOPO] 'is merely a tool used to execute the divorce decree.'" *Rice* at ¶ 7, quoting *Wilson* at ¶ 19.

{¶20} The division of property in a divorce decree "is not subject to future modification by the court except upon the express written consent or agreement of both spouses," and "[a] [DOPO] which is inconsistent with a division ordered in the decree of divorce * * * operates to modify the decree * * *." (Citations omitted.) *Pearl v. Pearl*, 2d Dist. Champaign No. 2012-CA-6, 2012-Ohio-4752, ¶ 11; *see Cameron v. Cameron*, 10th Dist. Franklin No. 12AP-349, 2012-Ohio-6258, ¶ 13 ("A DOPO is inconsistent with a decree when it modifies the division of retirement benefits ordered in the decree[.]"), citing *Knapp v. Knapp*, 4th Dist. Lawrence No. 05CA2, 2005-Ohio-7105, ¶ 40. "[A] DOPO modifies a division of retirement benefits when the DOPO varies from, enlarges, or diminishes the awards the court ordered in the decree." *Cameron* at ¶ 13, citing *Knapp* at ¶ 40. Therefore, unless the requirements for modification are met, the trial court does not have the authority to adopt a DOPO that varies from, enlarges, or diminishes the property division ordered in the divorce decree.

{¶21} Helen concedes that the DOPO "did in fact alter the distribution of [Larry's] retirement assets as previously ordered in the * * * final decree of divorce." (Appellant's Brief at 11-12). Helen thus acknowledges that the DOPO modified the judgment entry of divorce. Nevertheless, even assuming that the requirements for modification were not satisfied, the DOPO is not void. "[I]f a DOPO improperly modifies the terms of the divorce decree, the DOPO is deemed

-15-

voidable." *Fiedler* at ¶ 13; *Reynolds v. Turull*, 12th Dist. Butler No. CA2018-10-197, 2019-Ohio-2863, ¶ 15; *Fitzgerald v. Fitzgerald*, 8th Dist. Cuyahoga Nos. 105474 and 105476, 2018-Ohio-387, ¶ 14; *Archer v. Dunton*, 9th Dist. Summit No. 28519, 2017-Ohio-8846, ¶ 13-14; *Pearl* at ¶ 16-17; *contra Ostanek v. Ostanek*, 11th Dist. Lake No. 2019-L-140, 2020-Ohio-3930, ¶ 32 (noting the Eleventh District's position that "[w]here the terms of a QDRO conflict with the property division set forth in the divorce decree, * * * the QDRO is void or a legal nullity");[2] *Patten v. Patten*, 4th Dist. Highland No. 10CA15, 2011-Ohio-4254, ¶ 17 ("When a QDRO is inconsistent with the final divorce decree it is void and the trial court lacks jurisdiction to issue it."). While a court has the power to vacate a void judgment on its own initiative, "[a] court has no inherent authority to vacate voidable judgments." *Howell v. Howell*, 10th Dist. Franklin No. 13AP-961, 2014-Ohio-2195, ¶ 8, citing *McIntyre v. Braydich*, 11th Dist. Trumbull No. 96-T-5602, 1997 WL 772936 (Dec. 5, 1997); *Pearlman*, 162 Ohio App.3d 164, 2005-Ohio-3545, at ¶ 15 ("[U]nder the Rules of Civil Procedure, a trial court does not have the authority to sua sponte vacate a voidable judgment."), citing *Sweeney v. Sweeney*, 10th Dist. Franklin No. 98AP-66, 1998 WL 635286 (Sept. 17, 1998). Consequently, because the DOPO is,

---

[2] On November 10, 2020, the Supreme Court of Ohio accepted *Ostanek* for review on the following proposition of law: "Although Ohio Revised Code Section 3105.161(I) [sic] provides that property divisions in a domestic relations matter are not subject to further modifications with delineated exceptions, a trial court is not divested of subject-matter jurisdiction relative thereto and, if the trial court errs in violating or exceeding that limitation, the resulting order or judgment is, at most, voidable, not void ab initio." *See Ostanek v. Ostanek*, 160 Ohio St.3d 1447, 2020-Ohio-5169.

at most, voidable, we conclude that the trial court erred by sua sponte vacating the DOPO.

{¶22} Next, we consider whether the trial court erred by vacating the QDROs. As Helen correctly notes, the original QDRO and the amended QDRO did not modify the property division ordered in the January 19, 2016 judgment entry of divorce in any way. Pursuant to the judgment entry of divorce, Helen was entitled to "100% of [Larry's] deferred compensation fund/benefits that he had accrued through December 2, 2015 * * *." (Doc. No. 38). The original QDRO and the amended QDRO both assigned to Helen "an amount equal to one hundred percent (100%) of [Larry's] Total Account Balance accumulated under the [Deferred Compensation] Plan as of December 2, 2015 * * *." (Doc. Nos. 56, 70). Hence, the two QDROs were entirely consistent with the judgment entry of divorce. When a "'QDRO is consistent with the decree, it does not constitute a modification, * * * and the court does not lack jurisdiction to issue it.'" *State ex rel. Sullivan*, 124 Ohio St.3d 355, 2010-Ohio-252, at ¶ 19, quoting *Bagley v. Bagley*, 181 Ohio App.3d 141, 2009-Ohio-688, ¶ 26 (2d Dist.), *overruled on other grounds*, *Pearl*, 2012-Ohio-4752. Accordingly, the trial court did not in any sense lack jurisdiction to issue the QDROs, and because the trial court did not lack jurisdiction to issue the QDROs, the QDROs are not void. As a result, we conclude that the trial court erred when it sua sponte vacated the QDROs.

**{¶23}** Finally, we reach the portion of Helen's first assignment of error pertaining to the trial court's June 5, 2020 judgment dismissing her Annuity Motion without prejudice. However, before we can reach the merits of this part of Helen's first assignment of error, we must determine whether we have jurisdiction to review the trial court's June 5, 2020 judgment. *See Dunham v. Ervin*, 10th Dist. Franklin No. 18AP-325, 2019-Ohio-1860, ¶ 6 ("Appellate courts have the duty to sua sponte examine any deficiencies in jurisdiction."), citing *Price v. Jillisky*, 10th Dist. Franklin No. 03AP-801, 2004-Ohio-1221, ¶ 7. "Ohio appellate courts have jurisdiction to review only final appealable orders of lower courts within their districts," and "[i]f an order is not a final appealable order, the appellate court lacks jurisdiction and the appeal must be dismissed." *Id.*, citing Ohio Constitution, Article IV, Section 3(B)(2), R.C. 2501.02, and *Nnadi v. Nnadi*, 10th Dist. Franklin No. 15AP-13, 2015-Ohio-3981, ¶ 11, citing *Prod. Credit Assn. v. Hedges*, 87 Ohio App.3d 207 (4th Dist.1993). "Generally, a dismissal without prejudice is not a final appealable order, so long as the claims dismissed can be refiled." *Id.* at ¶ 8, citing *Nnadi* at ¶ 16, citing *Johnson v. H & M Auto Serv.*, 10th Dist. Franklin No. 07AP-123, 2007-Ohio-5794, ¶ 7.

**{¶24}** Here, the trial court dismissed Helen's Annuity Motion without prejudice. (Doc. No. 108). There is no indication in the record that Helen is barred from refiling her Annuity Motion when this matter is back before the trial court,

especially considering that, by holding that the trial court erred by vacating the DOPO and the QDROs, we necessarily reject the reasoning underlying the trial court's decision to dismiss Helen's Annuity Motion. Accordingly, the trial court's June 5, 2020 judgment is not a final, appealable order, and we must therefore dismiss Helen's appeal to the extent that it alleges error in that judgment. *See id.* at ¶ 9.

{¶25} Therefore, Helen's first assignment of error is sustained to the extent that it alleges error in the trial court's decision to vacate the orders entered subsequent to the January 19, 2016 judgment entry of divorce. To the extent that Helen alleges error in the trial court's June 5, 2020 judgment dismissing her Annuity Motion, Helen's appeal is dismissed.

## Assignment of Error No. II

**The trial court erred when it denied appellant Helen Murphy's motion to journalize agreement.**

{¶26} In her second assignment of error, Helen argues that the trial court erred by denying her motion to journalize the August 13, 2018 settlement agreement. Specifically, Helen contends that "the trial court erred when it failed to give proper[] consideration to the merits of [her] objection to the magistrate's decision when it did not address such in its [June 3, 2020 judgment entry]." (Appellant's Brief at 20). She notes that in its June 3, 2020 judgment entry, "[t]he

trial court did not address the merits of the motion [to journalize] or the facts leading to the filing of the motion as adduced at [the] hearing." (*Id.* at 18).

{¶27} Generally, "[a]n appellate court reviews the trial court's decision to adopt, reject or modify the Magistrate's decision under an abuse of discretion standard." *Tewalt v. Peacock*, 3d Dist. Shelby No. 17-10-18, 2011-Ohio-1726, ¶ 31, citing *Figel v. Figel*, 3d Dist. Mercer No. 10-08-14, 2009-Ohio-1659, ¶ 9, citing *Marchel v. Marchel*, 160 Ohio App.3d 240, 2005-Ohio-1499, ¶ 7 (8th Dist.). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶28} Helen argues that this matter should be remanded to the trial court for further consideration because the trial court failed to give full and proper consideration to her objection to the magistrate's decision. Under Civ.R. 53, "[i]f one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). "'Whenever objections are filed, therefore, a trial court must consider whether the magistrate properly determined the factual issues and whether the magistrate appropriately applied the law.'" *PNC Bank v. Myers*, 9th Dist. Medina No. 17CA0022-M, 2018-Ohio-1881, ¶ 10, quoting *Tillman v. Hyde Park*

*Condominium #3 Owners' Assn.*, 9th Dist. Summit No. 26455, 2013-Ohio-2432, ¶ 6, citing Civ.R. 53(D)(4)(d).

**{¶29}** After reviewing the trial court's June 3, 2020 judgment entry, we agree with Helen that the trial court failed to properly consider her objection to the magistrate's decision. Helen's sole objection to the magistrate's decision was that the magistrate erroneously concluded that Helen was not entitled to have the August 13, 2018 settlement agreement journalized. (Doc. No. 106). To remedy this supposed error, Helen requested that the trial court simply grant her motion and journalize the settlement agreement. (*Id.*). Yet, aside from the trial court's brief order denying Helen's motion to journalize, which, we note, was irreconcilable with its finding that Helen's objection was "well-taken and * * * sustained," the motion to journalize is not mentioned in the trial court's June 3, 2020 judgment entry. (Doc. No. 107). Nor is there any discussion of the findings of fact or conclusions of law that supported the magistrate's decision to recommend that the motion to journalize be denied. (*See id.*).

**{¶30}** Although the trial court stated that it had reviewed the transcript, there is no indication in the June 3, 2020 judgment entry that the trial court actually evaluated the magistrate's factual findings, let alone that the trial court determined that the magistrate appropriately determined the factual issues. (*See id.*). Furthermore, while the trial court stated that it had considered the "relevant law," it

did not explore whether the magistrate correctly applied the law when he determined that although Helen and Larry had entered into a settlement agreement, Helen had waived her right to have the agreement journalized. (*See id.*). Instead, all of the trial court's findings of fact and conclusions of law related to the circumstances surrounding the issuance of the DOPO and QDROs and to whether the DOPO and QDROs are void—matters that were not considered by the magistrate in the decision to which Helen objected. (*Id.*).

{¶31} Given the way in which the trial court approached and disposed of Helen's objection to the magistrate's decision, it remains unresolved whether the magistrate appropriately determined the factual issues and correctly applied the law. There has yet to be a true initial determination as to whether Helen's objection is meritorious. Therefore, this case must be remanded for the trial court to consider the issues raised in Helen's objection. *See Deutsche Bank Natl. Trust Co. v. Omar*, 9th Dist. Summit No. 28647, 2018-Ohio-2563, ¶ 8 (remanding case to the trial court to consider and rule on the appellant's objection because the trial court's decision did not "expressly rule on any of the objections and d[id] not mention the issue raised" in the objection); *Myers*, 2018-Ohio-1881, at ¶ 11.

{¶32} Helen's second assignment of error is sustained.

{¶33} For the reasons stated above, we dismiss appellant's appeal in part as it relates to her first assignment of error. However, having found error prejudicial

to the appellant herein in the particulars assigned and argued with respect to her second assignment of error and the remainder of her first assignment of error, we reverse the judgment of the trial court and remand to the trial court for further proceedings consistent with this opinion.

*Appeal Dismissed in Part;*
*Judgment Reversed and*
*Cause Remanded*

**ZIMMERMAN and SHAW, J.J., concur.**

**/jlr**